UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAMELA A. BROWNFIELD, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:05-cv-02468-EGS |
| MARTIN J. GRUENBERG, Acting Chairman, Federal Deposit Insurance Corporation, | ) ) ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT'S MOTION TO DISMISS COUNT I
OF PLAINTIFF'S COMPLAINT (HOSTILE WORK ENVIRONMENT)**

    Defendant Martin J. Gruenberg, in his official capacity as Acting Chairman of the Federal Deposit Insurance Corporation, hereby moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Count I of Plaintiff's Complaint.  The basis for this motion, as more fully set forth in the accompanying Memorandum in Support of Defendant's Motion to Dismiss Count I of Plaintiff's Complaint (Hostile Work Environment), is that the incidents alleged to have created a hostile work environment, even if accepted as true, are insufficient to meet the legal standards for proof of a hostile work environment under Title VII.

    In support of this motion, Defendant respectfully refers the Court to the supporting memorandum and exhibits thereto.

    An order granting the relief sought is attached hereto.

Respectfully submitted,

/s/ William S. Jones

_____
William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Patricia Davison-Lewis
D.C. Bar No. 414378
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6010)
Arlington, VA 22226
(703) 562-2315
(703) 562-2482 (Fax)


Attorneys for Defendant


Dated: April 21, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PAMELA A. BROWNFIELD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:05-cv-02468-EGS |
| MARTIN J. GRUENBERG, Acting Chairman, Federal Deposit Insurance Corporation, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT I
OF PLAINTIFF'S COMPLAINT (HOSTILE WORK ENVIRONMENT)**

**I. Introduction and Factual Background**

Plaintiff Pamela A. Brownfield is currently a CG-12 Management Analyst employed by the Federal Deposit Insurance Corporation ("FDIC") in its Management Support Section ("MSS"), Management Services Branch ("MSB"), Division of Administration ("DOA"), in Arlington, Virginia, who has brought a complaint alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e et seq., and as further amended by section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Complaint at ¶¶ 1, 7. She alleges that she was subjected to a hostile work environment from March 2004 to the present based on race (Complaint, Count I) and that she was denied a pay raise in 2005 based on race (Complaint, Count II). Id. at ¶¶ 19-20, 21-22. However, the incidents alleged in support of Count I of her Complaint, even if accepted as true, are insufficient to meet the legal standards for proof of a hostile work environment under Title VII.

Plaintiff first contacted the FDIC's EEO office on March 3, 2005.  Id. at ¶ 2.  In her Complaint, she has alleged the following discrete acts in support of her hostile work environment cause of action, one of which dates back a year before her initial contact with an EEO counselor:

1. In March of 2004, she was "passed over for promotion to the CG-13 level," although the other three CG-12 Management Analysts in MSS who were not African-American were promoted at that time.  Id. at ¶¶ 8-10.[1]

2. On December 16, 2004, she learned that her CG-12 Management Analyst position, along with three other positions in MSB, had been placed on the FDIC's "surplus list" for elimination at some point in the future.  Id. at ¶¶ 11-12.  (As Plaintiff notes elsewhere in her Complaint, however, her position has not been eliminated and she remains employed by the FDIC in the same CG-12 Management Analyst position.  Id. at ¶¶ 5, 7.)

3. Her immediate supervisor, Daniel Bendler, "chose to become upset with plaintiff because she was not the same jocular subordinate he was used to having in the section before he and his superiors passed her over for promotion and placed her job on the surplus list," and "[a]s a consequence with his annoyance with plaintiff's more somber attitude in his section, on January 25, 2005, Mr. Bendler wrote plaintiff up for not speaking to her coworkers after he had ordered her to do so again on January 18, 2005."  Id. at ¶¶ 15-16.

4. On February 17, 2005, she was advised via e-mail that she would be among the five percent of FDIC employees who would not be receiving a pay raise that year pursuant to the FDIC's CBC (Contribution-Based Compensation) System, and she was the only MSB

---

[1] As a remedy, Plaintiff requests that the Court "order defendant to promote plaintiff to a CG-13 level retroactive to March 2004, and to pay her all back pay due as a result of such promotion

2

employee who did not receive a raise in 2005 based on her corporate contributions in 2004.  Id. at ¶¶ 17-18.[2]

Plaintiff further alleges that she was unaware that she was in a hostile work environment until this last incident in February 2005, when she learned she would not be receiving a pay raise:

> While she did not recognize the incidents as part of this scheme when they happened, the acts of passing her over for promotion while promoting all of her non-Black CG-12 Management Analysts [sic] colleagues in her section, thereafter declaring her position alone in her section surplus, expecting her to continue to be jovial after being mistreated, ordering her to do so, and then subjecting her to discipline when she failed to do so, are all part of this scheme to create a hostile work environment for plaintiff based on her race.  This scheme culminated – and became recognizable as a hostile work environment scheme based on race – when FDIC management denied plaintiff a pay raise in 2005, while giving raises to her non-African American colleagues based in part on her own work.  This denial of a pay raise is, in any case, separately actionable as a blatant act of race-based discrimination.

Id. at ¶ 18.

## II. Applicable Legal Standards

A.  Motion to Dismiss Pursuant to Rule 12(b)(6).

A court may not grant a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6), for failure to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  When considering a motion to dismiss, the Court must treat factual allegations in the complaint as true and should also construe all reasonable

---

(with interest thereon)."  Complaint at 7 (Prayer for Relief (c)).

[2] This denial of a pay raise in February 2005 is also the sole basis for Count II of her complaint. As a remedy, Plaintiff requests that the Court "order defendant to retroactively provide plaintiff with the highest level pay increase in 2005, and to pay her all back pay due as a result of such pay raise (with interest thereon)."  Complaint at 8 (Prayer for Relief (d)).

inferences in the light most favorable to the plaintiff. Harris v. Potter, 310 F. Supp. 2d 18, 20 (D. D.C. 2004), and cases cited therein. A motion to dismiss will be granted only if no relief could be granted on those facts. Id. "However, the court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In deciding a Rule 12(b)(6) motion, the Court may consider supplemental materials outside the complaint without converting the motion to dismiss into a motion for summary judgment if such materials are "referred to in the complaint, and are central to the plaintiff's claims." Cephas v. MVM, Inc., 403 F. Supp. 2d 17, 20 (D. D.C. 2005) (quoting Krooth & Altman v. North American Life Assurance Co., 134 F. Supp. 2d 96, 99 (D. D.C. 2001)); Savage v. Scales, 310 F. Supp. 2d 122, 129 (D. D.C. 2004); Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 186 (D. D.C. 2001).

B. Exhaustion of Title VII Administrative Remedies

Procedures for handling complaints of discrimination brought by federal government employees under Title VII are found in 29 CFR Part 1614. A complainant must first contact one of her employing agency's EEO counselors within 45 days of the alleged discriminatory act or, in the case of a personnel action, within 45 days of its effective date. 29 CFR 1614.105(a)(1). If a person fails to comply with these time limits, and fails to establish that tolling the limits is warranted, a subsequent civil action is subject to dismissal. See Stewart v. Ashcroft, 352 F.3d 422, 426 (D.C. Cir. 2003).

C.  Hostile Work Environment.

The Supreme Court has held that Title VII forbids "discriminatory conduct [that is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin. . . ." Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993).  "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." Id. at 21 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986) (internal citations omitted)).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." Id.

This Court has recently articulated the requirements of an actionable hostile work environment claim as follows:

> The workplace environment becomes "hostile" only when the offensive conduct "permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) [parallel and additional citations omitted].
>
> The key terms, then, are "severe," "pervasive," and "abusive," as not just any offensive or discriminatory conduct constitutes an actionable hostile work environment.  Under Faragher v. Boca Raton, 524 U.S. 775, 787-88 (1998) [parallel citations omitted], in order to determine whether a work environment is sufficiently hostile to be actionable, a court should consider: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether the conduct reasonably interferes with the employee's performance. . . .  Moreover, it must be clear that the hostile work environment was the result of discrimination based on protected status. . . .

Silver v. Leavitt, 2006 WL 626928, at *11 (D. D.C. March 13, 2006).

### III.  Argument

A.  <u>Plaintiff Has Not Alleged Facts Sufficient to Support a Hostile Work Environment Claim</u>.

As previously described in more detail in Section I above, Plaintiff claims that she endured a hostile work environment beginning in March 2004 (but was not aware of it until February 2005) based on the following four occurrences:  (i) she was not promoted to a CG-13 Management Analyst in March 2004; (ii) her position was placed on the "surplus list" in December 2004; (iii) she was "written up" by Mr. Bendler in January 2005; and (iv) she was denied a pay raise in February 2005.

As an initial matter, the fact that Plaintiff claims a lack of awareness that she was working in a hostile work environment for nearly a year, from March 2004 until February 2005, belies any reasonable inference that she was subjected to conduct during this time period that was in any way "offensive" or "abusive," let alone "severe and pervasive."  As the Supreme Court has stated, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."  <u>Harris</u>, <u>supra</u>, 510 U.S. at 21-22.

Accordingly, Plaintiff's allegations in this case are on their face insufficient to state a claim for a hostile work environment.  <u>Compare</u> <u>Silver v. Leavitt</u>, <u>supra</u>, 2006 WL 626928, at *12 (holding that plaintiff had not alleged facts sufficient to support a hostile work environment claim because, <u>inter alia</u>, "[t]here is no allegation that defendant ever threatened plaintiff, or intimidated, degraded, subordinated, or abused plaintiff. . . . Hence, the facts of this case, even viewed in the light most favorable to plaintiff, do not establish a pattern of 'severe and pervasive' conduct that has affected the terms, conditions, or privileges of plaintiff's employment."), <u>with</u> <u>Powell v. Castaneda</u>, 390 F. Supp. 2d 1, 4-5 (D. D.C. 2005) (denying

6

motion to dismiss hostile work environment claim where plaintiff alleged, inter alia, that her supervisor "subjected her to offensive treatment" and "abusive behavior," "made the plaintiff's work environment 'punishing . . . by demeaning her daily with derogatory language . . . and his incessant, inappropriate anger,' and by insulting or chastising her on various occasions," and that he "physically threatened her on a number of occasions.").

 B.  A Failure to Promote in March 2004 Does Not Support a Hostile Work Environment Claim.

Management's failure to promote Plaintiff, when she was not selected for one of the three CG-13 Management Analyst positions that were filled in March 2004 pursuant to a Vacancy Announcement originally posted in November 2003,[3] does not support a hostile work environment claim.  As the court in Silver v. Leavitt recently explained:

> The hostile work environment theory of discrimination is not applicable to discrete, identifiable, isolated actions.  See [Nat'l R.R. Passenger Corp. v.] Morgan, 536 U.S. [101,] 114-115 [(2002)].  Failures to promote and failures to hire . . . are discrete actions that are easy to identify and thus distinguishable from cognizable hostile work environment claims.  See id.

2006 WL 626928, at *12.  Cf. Camp v. District of Columbia, 2006 WL 667956 (D. D.C. March 14, 2006) (holding, in a case that included allegations of hostile work environment, that plaintiff's termination/retaliation claim would be subject to dismissal for failure to exhaust administrative remedies, because this claim constituted a "discrete discriminatory act"):

> In Morgan, the Supreme Court held that that only those acts occurring within the limitations period were actionable, regardless of any connection between the earlier acts and the ones about which the plaintiff had filed a timely complaint.  As the Court stated, "discrete discriminatory acts are not actionable if time barred, *even when they relate to acts alleged in timely filed charges*."  Morgan, 536 U.S. at 113

---

[3] See attached Exhibit 1 (Vacancy Announcement No. 2003-HQ-2412 dated November 17, 2003, and the selection rosters showing Plaintiff's non-selection ("NS") on March 5, 2004).  These documents, as well as the other exhibits attached hereto, may be considered by the Court without converting the instant motion to dismiss into a motion for summary judgment in accordance with the authorities cited in Section II.A above.

> [parallel citations omitted] (emphasis added). "The key to determining whether a claim must meet the procedural hurdles of the exhaustion requirement itself, or whether it can piggy-back on another claim that has satisfied those requirements, *is whether the claim is of a 'discrete' act of discrimination or retaliation or, instead, of a hostile work environment*." Coleman-Adebayo [v. Leavitt], 326 F. Supp. 2d [132,] 137 [(D. D.C. 2004)]. "*Discrete acts such as* termination, *failure to promote*, denial of transfer, or refusal to hire" *are individual acts that "occur" at a fixed time*. Morgan, 536 U.S. at 114 [parallel citations omitted]. "Accordingly, plaintiffs alleging such discriminatory action must exhaust the administrative process regardless of any relationship that may exist between those discrete acts and any others." Coleman-Adebayo, 326 F. Supp. 2d at 138.

2006 WL 667956, at *7 (emphasis added and in original); accord Evans v. Chao, 2006 WL 297714, at *2 n. 3 (D. D.C. Feb. 7, 2006) ("independently actionable claims of discrimination may not also be characterized as a fragment of a hostile work environment claim in order to avoid filing requirements"); Powell v. Castaneda, supra, 390 F. Supp. 2d at 8-9 (noting that "[t]he court in Morgan distinguished discrete acts of discrimination [such as failure to promote] from hostile work environments" and dismissing all such discrete claims that had not been timely exhausted).

Moreover, because Plaintiff did not contact an EEO counselor until March 3, 2005, Complaint at ¶ 2, she failed to timely exhaust any claim arising more than 45 days earlier than that date, including any claim she may have had for discriminatory non-selection and/or failure to promote based on the CG-13 Management Analyst selections that were made in March 2004. See 29 CFR 1614.105(a)(1); Camp, supra; Evans, supra; Powell, supra. Although Plaintiff alleges in her Complaint at ¶ 18 that she did not become aware of a discriminatory "scheme" until February 2005, this would not excuse her failure to timely exhaust her administrative remedies concerning a discrete claim which arose nearly a year earlier. See Robinson v. Chao, 403 F. Supp. 2d 24, 30 (D. D.C. 2005) (dismissing hiring and pay claims for failure to contact an EEO counselor within the requisite 45-day period, and rejecting plaintiff's argument that the

8

discriminatory acts were not single episodes, but "were continuous, such that she could not have filed a complaint until she recognized the continuing acts of harassment as acts giving rise to a discrimination claim.").

C. <u>Designation of Plaintiff's Position as "Surplus" Was Not Offensive or Abusive Conduct</u>.

Management's designation of Plaintiff's position as "surplus" in December 2004, along with numerous other "surplus" positions in DOA and in other FDIC divisions and offices,[4] is neither an adverse personnel action nor the type of offensive or abusive conduct that would support a hostile work environment claim under the applicable legal standards discussed in Section II.C above. "To establish an adverse personnel action in the absence of diminution in pay or benefits, plaintiff must show an action with 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'" <u>Harris v. Potter</u>, 310 F. Supp. 2d 18, 21 (D. D.C. 2004) (quoting <u>Brown v. Brody</u>, 199 F.3d 446, 457 (D.C. Cir. 1999)); <u>see</u> <u>also</u> <u>Glenn v. Williams</u>, 2006 WL 401816, at *16 (D. D.C. Feb. 21, 2006) ("An adverse employment action has been defined by the Supreme Court, and applied by the D.C. Circuit, as 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (citing <u>Taylor v. Small</u>, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting <u>Burlington Indus. Inc. v. Ellerth</u>, 524 U.S. 742, 762 (1994))).

---

[4] <u>See</u> attached <u>Exhibit 2</u> (identifying current "Positions with Identified Employee Surpluses" in DOA, the Division of Finance, Legal Division, Office of Inspector General, and Ombudsman's Office, and showing, <u>inter</u> <u>alia</u>, "Management Analysts, CG-343-12" in the DOA listing as a position projected to become surplus). These documents, which constitute the "surplus list" referred to in the Complaint at ¶¶ 11-12, may be considered by the Court without converting the instant motion to dismiss into a motion for summary judgment in accordance with the authorities

In this case, the designation of "CG-343-12 Management Analysts" on the DOA "surplus list" has had no effect at all on Plaintiff's pay or benefits, has not adversely affected any of the terms, conditions or privileges of Plaintiff's employment, and has not been accompanied by any offensive or abusive conduct. Accordingly, it is not the sort of "severe or pervasive harassment" that would support a hostile work environment claim.

Moreover, as an independent, discrete claim, it would require timely exhaustion, which did not occur – Plaintiff learned of the "surplus" designation on December 16, 2004, Complaint at ¶ 11, but she never contacted an EEO counselor until March 3, 2005, over 45 days later and therefore outside the period mandated by 29 CFR 1614.105(a)(1).

D. The Allegation that Her Supervisor "Wrote Plaintiff Up" is a Mischaracterization.

Plaintiff has alleged that on January 25, 2005, her supervisor, Mr. Bendler, "wrote [her] up" and "subject[ed] her to discipline" as part of a "scheme to create a hostile work environment for plaintiff based on her race." Complaint at ¶¶ 16, 18. By its explicit terms, however, the January 25, 2005, "write-up" that Plaintiff alleges was discriminatory harassment was neither a letter of admonishment nor a disciplinary notice.[5] It states, inter alia: "This is an informal email that will not be permanently included in any formal system of record. Instead, this email is intended to improve communication and begin 2005 on a more positive and productive footing."

---

cited in Section II.A above.

[5] See attached Exhibit 3 (copy of e-mail message dated January 25, 2005, to Plaintiff from Daniel Bendler, referred to in the Complaint at ¶ 16).

10

Plaintiff alleges no adverse consequences of this alleged "write-up" that affected the terms, conditions or privileges of her employment, because there were no such adverse consequences. The inoffensive sentiments expressed in Mr. Bendler's e-mail cannot reasonably be construed to constitute the type of "severe and abusive conduct" that must be alleged in order to support a hostile work environment claim.

Even if Mr. Bendler's January 25 e-mail had actually been a formal warning letter or disciplinary notice, its issuance would not be independently actionable as an adverse employment action. As this Court has previously observed:

> Courts in this Circuit have held that formal letters of admonishment and disciplinary notices that have no effect on an employee's grade or salary level do not constitute adverse employment action. See Brown v. Brody, 199 F.3d 446, 458 (D.C. Cir. 1999) (letters of admonishment not an adverse employment action); Walker v. Washington, 102 F. Supp. 2d 24, 29 (D. D.C. 2000) (disciplinary notice not an adverse employment action).
>
> To establish an adverse personnel action in the absence of diminution in pay or benefits, plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of employment." Brown, 199 F.3d at 457. In this case, the Letter of Warning at issue does not constitute an adverse employment action because plaintiff has failed to allege that the discipline directly affected his job title, duties, salary, benefits or work hours in any material matter.

Harris v. Potter, supra, 310 F. Supp. 2d at 21.

E. Denial of a Raise in 2005 Does Not Support a Hostile Work Environment Claim.

Plaintiff's failure to receive a raise pursuant to the terms of the FDIC's 2005 Contribution-Based Compensation (CBC) System because she was ranked by management in the lowest CBC group[6] does not support a hostile work environment claim because it does not constitute offensive conduct that is severe and pervasive, and it is a "discrete act" in the nature of

---

[6] See attached Exhibit 4 (Description of the FDIC's CBC System stating, inter alia, that Group V employees, "[t]he bottom 5% of contributors," will receive "a pay out of zero") and Plaintiff's

11

a failure to promote. Cf. Glenn v. Williams, supra, 2006 WL 401816, at *20 ("the Department's alleged failure to award Dickens a career ladder promotion is more akin to a situation where an employee is denied an increase in pay or grade . . . ."). Plaintiff alleges that on February 17, 2005, she was advised that she would not be receiving a CBC pay raise for 2005 – an allegation of "[a] discrete . . . discriminatory act [that] 'occurred' on the day that it 'happened.'" Morgan, supra, 536 U.S. at 110. Plaintiff contacted an EEO counselor approximately two weeks later, on March 3, 2005. While this may properly state a separate claim under Count II of the Complaint, it does not support a hostile work environment claim under Count I, for the same reasons set forth in Section III.B above concerning her failure to promote claim dating from March 2004.

### IV. Conclusion

Beginning in 2004, Plaintiff had several disappointments at the FDIC. In March 2004, she was not selected for a promotion that she had applied for. Nine months later, in December 2004, she learned that the position she occupied had been designated as surplus. About a month later, in January 2005, she received an e-mail from her supervisor that expressed concerns with her conduct. In mid-February 2005, she was notified that she would not be receiving a raise under the FDIC's Contribution-Based Compensation System.

Collectively, these incidents do not satisfy the legal standard for a hostile work environment claim under Title VII. Although Plaintiff characterizes these incidents as being "all part of this scheme to create a hostile work environment based on her race," Complaint at ¶ 18, they do not meet the standard of "severe, pervasive and abusive" conduct that is required to state a claim for a hostile work environment. Moreover, they are the types of "discrete acts" that are

---

references to the "CBC pool" in the Complaint at ¶¶ 17-18.

12

distinct from a hostile work environment claim. Accordingly, the Court should dismiss Plaintiff's hostile work environment claim set forth in Count I of the Complaint.

Count I is subject to dismissal by the Court without considering any of the ancillary documents attached as exhibits to this motion to dismiss. However, as discussed in Sections I and II.A above, because the Complaint refers to the promotions in March 2004, the "surplus list," the "write-up" on January 25, 2005, and the denial of a raise under the CBC System in February 2005, the Court may consider the following exhibits, all of which are central to Plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment: (i) the relevant vacancy announcement and rosters, which illustrate that the "promotions" were made pursuant to a formal posting and selection process; (ii) the "surplus list" communicated to employees on the FDIC website, which lists numerous positions with identified employee surpluses throughout the Corporation, in Washington and in the regional offices; (iii) Mr. Bendler's e-mail dated January 25, 2005, which is mischaracterized in the Complaint as a disciplinary write-up; and (iv) the description of the CBC System, under which all non-bargaining unit employees were evaluated and placed into five groups on the basis of their 2004 corporate contributions, with the bottom five percent receiving no pay increase. These documents provide context and further clarification that the incidents complained of do not constitute a hostile work environment, if further clarification is needed.

For all of the foregoing reasons, Defendant requests that the Court grant the Motion to Dismiss Count I of Plaintiff's Complaint (Hostile Work Environment) pursuant to Fed. R. Civ. P. 12 (b)(6), for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ William S. Jones
_____
William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Patricia Davison-Lewis
D.C. Bar No. 414378
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6010)
Arlington, VA 22226
(703) 562-2315
(703) 562-2482 (Fax)


Attorneys for Defendant

Dated: April 21, 2006

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 21, 2006, I caused a true and correct copy of the foregoing Defendant's Motion to Dismiss Count I of Plaintiff's Complaint (Hostile Work Environment) to be served on Plaintiff, through counsel, by first-class mail, postage prepaid, addressed as follows:

                David H. Shapiro, Esq.
                Swick & Shapiro, P.C.
                1225 Eye Street, N.W.
                Suite 1290
                Washington, DC 20005


                /s/ William S. Jones
                _____
                William S. Jones
                Counsel
                Federal Deposit Insurance Corporation