UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAMELA A. BROWNFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05-cv-02468-EGS |
| ) | |
| MARTIN J. GRUENBERG, ) | |
| Acting Chairman, ) | |
| Federal Deposit Insurance Corporation, ) | |
| ) | |
| Defendant. ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
COUNT I OF PLAINTIFF'S COMPLAINT (HOSTILE WORK ENVIRONMENT)**

In her Memorandum in Support of her Opposition to the Defendant's Motion to Dismiss Count I of Plaintiff's Complaint ("Opposition"), the Plaintiff asserts two arguments. First, Plaintiff argues that Count 1 of the Complaint (the hostile environment claim) cannot be dismissed because "[u]nder the notice pleading provisions of Federal Rules of Civil Procedure Rule 8 (Rule 8) a plaintiff in a discrimination case is not required to detail facts to establish a prima facie case in her Complaint." Opposition at 1. Second, Plaintiff claims that the facts pled with respect to the specific incidents alleged in her complaint are sufficient to state a hostile work environment cause of action. Id. at 3. However, as demonstrated below, these arguments are without merit.

As outlined in the Agency's Memorandum in Support of Defendant's Motion to Dismiss Count I of Plaintiff's Complaint ("Motion to Dismiss"), "a workplace environment becomes 'hostile' for purposes of Title VII . . . only when offensive conduct permeates[s] [the workplace]

with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Keeley v. Small, 391 F. Supp. 2d 30, 50 (D. D. C. 2005) (holding that verbal insults directed at plaintiff and comments regarding plaintiff's prior litigation fell short of actionable harassment under a hostile work environment assessment).

The key terms are "severe," "pervasive," and "abusive," as "not just any offensive or discriminatory conduct constitutes an actionable hostile work environment." Id.; Nuridden v. Golden, 382 F. Supp. 2d 79, 107 (D.D.C. 2005). It follows that in assessing whether a work environment is sufficiently hostile to be actionable under Title VII:

> [A] court must consider (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether the conduct reasonably interferes with the employees performance.

Keeley, 391 F. Supp. at 51.

These standards for judging hostility are "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Id. "Properly applied, [these stringent standards] will filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender related jokes and occasional teasing." Id. (citing Faragher v. Boca Raton, 524 U.S. 775, 787 – 88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

It also bears noting that "to sustain a hostile work environment claim . . . a [plaintiff] must produce evidence that she was discriminated against because of her status in a protected group." Nuridden, 382 F. Supp. at 107. This Circuit has explained that

> [e]veryone can be characterized by sex, race, ethnicity . . . and many bosses are harsh, unjust and rude. It is therefore important to exclude from consideration personnel decisions that lack a linkage to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

2

<u>Id</u>.  Other than mere conclusory allegations, Plaintiff has pled no substantive facts linking the conduct which she challenges to her race.

**I.      The Hostile Environment Claim Should be Dismissed Because the Federal Civil Procedure Rule 8 Pleading Requirements Do Not Obviate the Need to Plead Facts Consistent with the Elements of a Hostile Environment Cause of Action.**

In her Opposition, Plaintiff identifies the following incidents in support of her claim that she was subjected to a race-based hostile working environment:

> This treatment has included but not been limited to her being passed over for a promotion to the CG-13 level, being notified that her job position was being placed on the "surplus list" for elimination, being isolated from her coworkers and being reprimanded for not speaking to her coworkers.  Ct. at 4 – 5.  Finally, on February 17, 2005, [she] . . . was denied a raise in salary while all of the other employees in the Management Support Section received a raise.  Ct. at 5.

Opposition at 2.  However, even when assessed in the context of the liberal pleading requirements of Fed. R. Civ. P. 8, Plaintiff's hostile environment claim can not withstand a motion to dismiss.  As outlined in the Motion to Dismiss, the standards for a legally sufficient hostile environment claim are stringent, and the few discrete and separate incidents that Plaintiff has articulated in support of her hostile environment claim (even taking all factual allegations as true), fail to rise to the level of adverse and severe conduct required to establish an actionable claim.

Additionally, Plaintiff's vague hints of more detail to come as the case unfolds cannot transform her legally insufficient claim into a claim that meets the stringent elements of a hostile environment cause of action.  Similarly, Plaintiff's resourceful use of the phrase "included but . . . not limited to" to preface her recitation of the incidents which she identifies as the basis of her cause of action fails to transform the discrete non-abusive and non-threatening incidents alleged into a viable hostile environment claim.  Accepting Plaintiff's premise in this regard would provide free rein to all disgruntled employees to transform legally insufficient claims of non-

pervasive and non-abusive conduct into viable hostile work environment claims by simply prefacing the recitation of their claims with some variation of the broad catchall phrase "including but not limited to," thus circumventing any requirement to provide supporting detail.

Notwithstanding the Fed. R. Civ. P. 8 "short and concise statement" pleading requirements cited by Plaintiff, a certain degree of specificity in pleading is required to place Defendant on notice as to the nature of the severe and pervasive conduct plaintiff alleges.[1] Yet, Plaintiff has failed to identify with specificity pervasive and ongoing mistreatment or incidents which rise to the level of misconduct required to meet the elements of a hostile environment claim. For example, Plaintiff has not identified any specific comments by supervisors that were so severe as to constitute adverse employment actions or so severe as to affect the terms and conditions of employment. Defendant submits that Plaintiff has failed in this regard because Plaintiff was simply not subjected to such severe or pervasive mistreatment. Therefore, she cannot plead facts to support her claim.

Plaintiff's reliance upon Fed. R. Civ. P. 8's "clear and concise statement" pleading requirements to establish her claim is unavailing. Clearly, the notice pleading requirements of Rule 8 do not obviate the need to plead the essential elements of a cause of action and to state the elements with sufficient particularity so as to provide notice as to the elements of the claim. Plaintiff should not be allowed to hide behind the pleading requirements as a subterfuge for failing to plead the essential elements of her alleged cause of action. The Court should reject

---

[1] Moreover, given that hostile environment claims involve pervasive and severe mistreatment or conduct, if follows that an employee who finds herself subjected to an actionable hostile environment should, even at this very preliminary stage of the legal proceedings, possess a full and keen awareness of the details of the mistreatment and therefore, the elements of her claim. Therefore, no need for discovery or similar hurdle should preclude Plaintiff from setting forth with specificity the essential elements of her claims.

Plaintiff's attempt to use Rule 8 as an excuse for failing to plead with particularity and as a means to circumvent dismissal of her legally insufficient claims.

In her Opposition, Plaintiff has failed to provide additional information illustrating the manner in which the generic incidents alleged as the basis of her hostile environment claims constitute severe or pervasive conduct. Even under Fed. R. Civ. P. 8 standards, Plaintiff fails to plead the requisite elements of a hostile environment claim, and Count I should be dismissed.

**II.    The Hostile Environment Claim Should be Dismissed Because Even Accepting all the Complaint's Well-pled Factual Allegations as True, and Drawing all Reasonable Inferences in the Nonmovant's Favor, the Incidents Pled Fail to Rise to the Level of Pervasive and Abusive Treatment That Meet the Elements of a Hostile Environment <u>Cause of Action.</u>**

**A) <u>The Failure to Promote Plaintiff Incident</u>**

Even if the Court accepts the incidents pled by Plaintiff as true, Plaintiff's claims fail to meet the requisite elements of a hostile work environment cause of action. First, with respect to the failure to receive a promotion claim, case precedent establishes that failure to receive a promotion is not a discrete act that will support a hostile environment claim. See e.g. <u>Silver v. Leavitt</u>, No. 05-0968, 2006 WL 626928 (D.D.C. March 13, 2006) and other authorities cited in the Motion to Dismiss.

With respect to her "stale" non-promotion claim, in her Opposition, the Plaintiff additionally argues that her hostile environment claim should not be dismissed because "a plaintiff . . . need not exhaust administrative remedies concerning every action that comprises the hostile work environment which can include acts occurring outside the statutory period." Opposition at 5, citing <u>Law v. Continental Airlines Corp, Inc</u>., 399 F.3d 330, 334 (D. C. Cir. 2005). Relying upon <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S 101, 116 – 17 (2002), Plaintiff reasons that she may use prior acts as background evidence in support of a timely claim

5

and/or as "relevant background evidence in a proceeding in which the status of a current practice is at issue." See also Opposition at 5, citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)). However, even *assuming, arguendo,* Plaintiff's contention that her stale non-promotion claim should be considered as "background evidence" of a purported pattern of incidents, her hostile environment claim still fails because all the other incidents which she alleges as part of a purported pattern of hostile environment (position designation as surplus, e-mail "write-up," etc.) do not independently or collectively rise to the level of pervasive and abusive conduct required to state a hostile environment claim.[2]

### B) The Designation of Plaintiff's Position on the Surplus List

In her Opposition, Plaintiff does not dispute that any claim she may have had relating to designation of her position as surplus is time-barred. See generally Motion to Dismiss at 10. In any event, surplus list designation does not represent the severe, abusive and pervasive action necessary to support hostile environment claims and Plaintiff offers no argument in her Opposition to prove otherwise.

It is clear from the face of the March 10, 2006 listing of "Positions with Identified Employee Surpluses" (Motion to Dismiss, Exhibit ("Ex."). 2) that Plaintiff's position was simply one of numerous Agency-wide positions placed on the Surplus List as part of a downsizing initiative. Id. Additionally, the document indicates that employees encumbering such positions would be eligible for preferential consideration for vacant positions throughout the Agency. Id.

---

[2] Evans, 431 U.S. at 558 clarifies that a prior act may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue. However, the Evans court made clear that such background evidence "separately considered is merely an unfortunate event in history which has not present legal consequences." Id. at 559. Moreover, such background evidence cannot suffice where plaintiffs have offered no evidence of discriminatory purpose other than (at most) the discrete time-barred decision not to advance them. Law, 399 F.3d at 334.

Despite having her position placed on the list, Plaintiff makes no allegation of tangible harm or adverse action in connection with such placement.  The Plaintiff remains employed by the Agency.  Therefore, placement of her position on the Surplus List can not be construed as sufficiently pervasive or abusive conduct to support a hostile environment claim.

**C) <u>The E-mail "Write-up" Incident</u>**

In her Report of Investigation affidavit dated August 9, 2005 ("Brownfield Aff."), attached hereto, Plaintiff claimed that "Mr. Bendler told me that I could not go around 'snubbing' the people in the office, and on January 25, 2005, 'he wrote me up' based on what he perceived occurred during a January 18, 2005 discussion . . . ."  Even if proved, this fails to rise to the level of abusive or pervasive conduct requisite to support a hostile environment claim.  <u>See</u> Brownfield Aff. at 5.  The innocuous e-mail which the Plaintiff initially mischaracterizes as a "write-up" and later as a "reprimand" speaks for itself.  <u>See</u> Motion to Dismiss, Ex. 3.  The e-mail is representative of a concerned and conscientious supervisor, not the spiteful, threatening or abusive conduct necessary to support a hostile environment claim.

Indeed, in the body of the e–mail, Plaintiff's supervisor makes certain to convey to her that it is an "informal" communication "not [to be] included in any formal system of record."  Ex. 1 at 1.  Rather, it was simply intended to "improve communication and begin 2005 on a more positive and productive footing."  <u>Id</u>.  Her Supervisor expresses "hope" that by "sharing his concerns with [her]" they could "establish some minimum expectations."  <u>Id</u>.

Clearly, on its face, the e-mail simply represents a supervisor conveying basic standards of professional conduct in the workplace (with which all employees should already be familiar).[3]

---

[3] His statements that: instructing her supervisor to leave her office is not acceptable; they should speak to each other in a professional manner and with respect; and that there is an

Her supervisor closes expressing that the Plaintiff is an "extremely capable and intelligent professional" and that it his "greatest desire to see [her] excel in 2005, rise above recent adversities, and ultimately realize her goals" and that Plaintiff "may call or stop by [his] office almost anytime." Id. The e-mail contains no derogatory insults, reference to race, or threatening or pervasive conduct.

In her Opposition, Plaintiff fails to cite any aspect of the so-called "write-up" that is abusive, threatening, punitive, or unduly severe. This e-mail "write-up" on its face is simply an "ordinary tribulation of the workplace for which Title VII does not provide a remedy." See, Keeley, 391 F. Supp. at 43. Therefore, Plaintiff's claims regarding the e-mail fail to support a hostile environment claim.[4]

### D) "Being Isolated"

Plaintiff's Opposition reflects a new approach in her assertions of "isolation" that is inconsistent with the facts as pled in her prior affidavit and Complaint. She now attempts to portray vague claims of feeling "isolated" as representing some sort of affirmative wrongful conduct or "bad acts" perpetrated by her supervisors. However, this approach fails to transform her claim into a viable hostile environment claim.

---

expectation that they "not resort to name calling or raising our voices" can hardly be perceived as unduly harsh, abusive or threatening. Id.

[4] At most, even if the write-up is perceived as criticism, this Circuit recognizes that "criticism is part of the 'ordinary tribulations of the workplace' for which Title VII does not provide a remedy." See Keeley 391 F. Supp. 2d at 43 (citing Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (admittedly vulgar comment that supervisor was "sick of this lawsuit bullsh--" was not itself actionable as Title VII does not purge the workplace of vulgarity)). It is well established that "[c]onduct that sporadically wounds or offends, but does not hinder an employee's performance does not rise to the level of adverse action." Keeley, 391 F. Supp 13 citing Childers v. Slater, 44 F. Supp., 2d 8, 19 (D.D.C. 1999), *modified on reconsideration*, 197 F.R.D. 185 (D.D.C. 2000).

Specifically, in her Opposition, Complainant alleges that the hostile treatment to which she was subjected included "being isolated from her coworkers." Opposition at 2. In the Opposition, Plaintiff goes on to state that "[s]he was initially denied a promotion to Grade 13 in March 2004 . . . and while she continued to work with her . . . fellow Management Analysts, she was isolated from them . . . ." Opposition at 4. However, this claim is at odds with Plaintiff's prior statements which make clear that any "isolation" experienced by the Plaintiff was self-imposed as a result of her own conscious choice (i.e., her personal decision that she did not wish to associate with others, her personal coping skills, and her own peculiar manner of reacting to less than favorable news of routine business decisions that occur when an Agency is in a downsizing mode, see Brownfield Aff. at 1) – not the result of hostile acts perpetrated upon her by someone else.

Indeed, Plaintiff's Complaint details her emotions (including anger and upset) as well as the fact that she chose to isolate herself as a result of her "fear that if she engaged her colleagues in small talk she would become overly emotional." Complaint at ¶ 16. After being passed over for promotion, Plaintiff states that her personality changed. She exhibited a "more somber attitude" and was "not the same jocular subordinate." Complaint at ¶¶ 15 – 16. In fact, according to the facts as pled in her Complaint, in January of 2005 she still "had not returned to her old friendly self because she was just so upset" about the non-promotion and surplus designation. Complaint at ¶16.

Similarly, in her affidavit, Plaintiff states that she was "angry" after her position was put on the surplus list, Brownfield Aff. at 4, and that when she was not promoted "[she] did not initially feel like socializing at the office." Id. Plaintiff later explains that "[h]owever, by the end of March 2004, [she] had 'got back with the program' – once [she] *got over* not getting the

9

promotion." Id. (emphasis added).  Thus, Plaintiff acknowledges that she made a conscious decision to resume interacting with her coworkers (apparently after she learned to better control her emotions or how to keep them in check from adversely interfering with her work demeanor).

Her affidavit similarly details the manner in which she chose to isolate herself as the result of unfavorable news:

> [H]owever, I did again stay to myself after being notified of the position being placed on the surplus list, *closing my door often* because I needed to concentrate on work and *did not want to chit chat with others* in the office.  I attended Corporate sponsored individual sessions in Anger and the Other Emotions of change . . . *I did not want to socialize* because of the hurtful discriminatory decision he had made.

Id. at 5 (emphasis added).  Again, by her own words Plaintiff conveys that her isolation was the result of her own conscious decision that she did not wish to socialize with others – not a situation that was forced upon her as a result of the abusive conduct of others.  That Plaintiff chose to react with anger, and chose to isolate herself, does not transform her supervisor's business decisions relating to promotions and surplus placement into incidents of abusive treatment that would support a hostile environment claim.

Once Plaintiff got her emotions in check she returned to her "old self" and interacting with her coworkers.  Plaintiff's managers cannot be blamed for Plaintiff's reactions.  Thus, her new emphasis on isolation in her Opposition, albeit admittedly "self-imposed," clearly fails to present the requisite elements of severe or pervasive conduct or mistreatment that would support a hostile environment claim.

In her Opposition, Plaintiff further argues that her

> Complaint makes clear that . . . she was isolated from [her coworkers] and her supervisor began confronting her (on more than one occasion) about what he perceived as her despondency at work, without regard to the fact that her dampened spirits were related to the FDIC's mistreatment of her.

10

Opposition at 4.  This argument fails, as again, by her own prior admission, any isolation that she experienced was the result of her own actions and conduct and can not form the basis of a claim against her supervisors. Additionally, the allegations are not pled with particularity nor sufficient specificity.

Notwithstanding Plaintiff's generic assertions of a "pattern," her vague statement that her supervisor "began confronting" her about her "despondency" and "dampened spirits" is too vague to form the basis of  an actionable claim  representing the  type of abusive and/or threatening behavior) requisite to state a hostile environment claim.  Even taking those assertions as true, the behavior pled would at most represent normal interaction and exchange among employees and their supervisors in the workplace.  As there are no allegations of physical force, physical threats or yelling, the vague phrase "began confronting her" suggests only that her supervisor initiated conversations with her concerning her demeanor in the workplace.  Such conversation, although perhaps unpleasant for Complainant, represents ordinary tribulations of the work place and cannot support a hostile environment claim.  <u>See generally</u>, <u>Keeley</u>, <u>supra</u>.

Considering the totality of Plaintiff's pleading and drawing all inferences in favor of Plaintiff, she has failed to plead hostility in the work environment that was "severe," pervasive," and "abusive" with respect to any of the incidents alleged.  Were the Court to accept the Plaintiff's contentions, unhappy employees could always defeat motions to dismiss by simply hinting that the limited acts cited were "part of a pattern" of misconduct  with respect to which details would follow as the case developed and/or by pleading vague assertions that one's supervisor caused them to feel "isolated."  Plaintiff has failed to state a claim of hostile environment and therefore, Count I must be dismissed.

**Conclusion**

For all of the foregoing reasons, Defendant requests that the Court grant the Motion to Dismiss Count I of Plaintiff's Complaint (Hostile Work Environment) pursuant to Fed. R. Civ. P. 12 (b)(6), for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ William S. Jones
_____
William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Patricia Davison-Lewis
D.C. Bar No. 414378
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6010)
Arlington, VA 22226
(703) 562-2315
(703) 562-2482 (Fax)

Attorneys for Defendant

Dated: May 26, 2006