UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAMELA A. BROWNFIELD, )
)
Plaintiff, )
)
v. ) Case No. 1:05-cv-02468-EGS
)
SHEILA C. BAIR, )
Chairman, )
Federal Deposit Insurance Corporation, )
)
Defendant. )

**PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff hereby answers the interrogatories propounded by defendant as follows:

(a)   The information supplied in these answers is not based solely on the knowledge of the executing party, but includes the knowledge of the party, its agents, representatives and attorneys, unless privileged.

(b)   The word usage and sentence structure may be that of the attorney assisting in the preparation of these answers and thus, does not necessarily purport to be the precise language of the executing party.

## INTERROGATORIES

Interrogatory No. 1:   Identify and describe in full and complete detail each and every act and/or omission on the part of the agency, which constitutes the basis of your discrimination and/or retaliation claims and, as to each and every such act and/or omission:

   a.   identify the specific personnel decision or act for which you are seeking relief, including the date(s) and a summary thereof;

1

Response: Plaintiff has held her current position as a CG-12 Management Analyst since 2000 and has more than 25 years of Federal service. Plaintiff was the only CG-12 employee on the MSS staff of 8 employees, and the only African American.

Plaintiff has been discriminated and retaliated against, harassed, and subjected to a hostile work environment because of her race (African American) and protected EEO activity. Mr. Bendler and Mr. Sherman are the management officials responsible for continuously discriminating against Plaintiff since 2004 or earlier. Plaintiff filed a formal EEO complaint in May 2005 over a pay issue. The alleged discriminating officials were Mr. Bendler, Mr. Sherman, and Arleas Upton Kea, the DOA Director. Mr. Bendler's and Mr. Sherman's harassment has continually intensified since Plaintiff filed that complaint.

In February 2006, Ann Bridges Steely, Associate Director, Acquisition Services Branch (ASB), allegedly complained about Plaintiff's behavior while Plaintiff was in an introduction to business analysis training with co-workers and other employees from the Acquisition Services Branch. Mr. Bendler approached Plaintiff about two hours after the conclusion of the training class, and told her Ms. Steely had complained that Plaintiff had disturbed and distracted employees in the ASB. He said she needed to stay away from the ASB, but Plaintiff does not recall even going to that work area during that week. During training, Plaintiff spoke a little with her friends from ASB, but it was by no means disruptive to anyone and no one said anything at the time. He also told her that she should be "mindful" of spending extensive time in the ASB work area. He spoke as though she had been making trouble in ASB, even though she had not been going to ASB with any kind of frequency.

Plaintiff thought this was strange, so she asked her co-workers if he said this to any of them. Those she asked all said no. Plaintiff also asked several people in ASB if they knew anything about this and they said no. Plaintiff did not communicate with Ms. Steely or Mr. Sherman about this incident.

2

After they talked, Plaintiff e-mailed Mr. Bendler, confirming what was said. Plaintiff felt as though she had been singled out for no good reason. She felt she couldn't talk to anyone anymore out of fear that her supervisor would make accusations against her and that he would tell her not to speak with her friends within the FDIC. His message was for her to be watchful about to whom she talked.

Mr. Bendler also harassed Plaintiff by lessening her workload. For many years, Plaintiff was heavily involved in the Chief Financial Officer Act risk assessment process. She was responsible for all data write-ups after the testing phase was completed, with oversight from a CG-14 employee. In 2005, this responsibility was taken away and Plaintiff was left with only one small part -- testing and writing up the procurement credit card area. Her work went higher-graded employees like William Gatley (13), David Lok (13), Gail Kennedy (14), Andrew Nickle (14), and Wilma Probst Levy (14). She was told in a staff meeting about the change but was never given a valid reason for the adverse impact this had on her duties.

Plaintiff was also the DOA contact person for the Directive Review Process since 2003. This work was taken from her sometime during 2005. Plaintiff stopped receiving requests for her to apply the reviewing process. Plaintiff does not know who does that work now. However, the Review Process still exists. There was no meeting held, or announcement made about the change.

During this time period, Plaintiff continually asked Mr. Bendler for work and he usually responded that he had nothing. Plaintiff spent one 6-week period (between January and February 2006) with no assignments, while actively asking for work. Other times, she received no assignments for one or two, even three weeks at a time. Plaintiff was left with reviewing and organizing files and attending to whatever little jobs she could find or make up. During this period, all her white co-workers were busy. When she asked about that difference, Mr. Bendler just said their work areas were more "robust."

Another example of harassment concerns restrictions on Plaintiff's contact with co-workers. Because of Mr. Bendler's complaint in February 2006 about her bothering people, she began to be careful about speaking to anyone. Plaintiff's floor has DOA and the Division of Finance offices and she knows and used to be friendly with many employees from both divisions. Plaintiff has not been told that she cannot speak to anyone but her actions have certainly been chilled by Mr. Bendler's treatment.

Mr. Bendler has also excluded Plaintiff and treated her with hostility. For example, on February 9, 2006, following an all-hands Division meeting there was a branch appreciation luncheon for 20-25 people in the MSB. He knew Plaintiff was not interested in socializing because of how he had been treating her so Plaintiff did not attend the luncheon, which was held in a conference room next to her office. Close to the end of the luncheon, Mr. Bendler came to Plaintiff's office, and asked if she wanted to join them. The luncheon was nearly over and Plaintiff had not indicated that she planned to attend so she felt his late invitation was odd. Plaintiff said no and immediately after he stepped back into the room, the people in the room exploded in laughter. It was obvious that he said something about Plaintiff to make everyone laugh. She felt very bad after that and wanted to go into the room and tell him to stop treating her like that. Later Plaintiff told him if she doesn't come to an event like that it is because she does not want to come. He replied that he just wanted to make an invitation to her a second time.

Plaintiff also alleges she was discriminated and retaliated against when she was placed in Group III in the Pay for Performance Program in March 2006. This was the first year employees were allowed to review and comment on their PFP evaluations. Mr. Bendler completely omitted some of Plaintiff's important work from her evaluation. Plaintiff e-mailed him, pointing out the work he had forgotten. He also stated in her PFP form that she "helped" with revisions to CFOA documents when, in fact, she did all the revisions herself. Plaintiff should have been placed in Group II because she does excellent work

4

and even seeks work when he fails to give her anything to do.

Plaintiff believes her race has been used against her because she was the only African American in the office, the only one on the surplus list and the only person who got no raise. In addition, she has been subjected to continuous retaliation ever since she went to the agency's EEO office. Mr. Bendler and Mr. Sherman strongly resent her challenge to their actions by filing an EEO complaint.

    b.  identify the person(s) alleged to have committed the alleged discriminatory act or omission, or who you contend are responsible for the personnel decision or act for which you are seeking relief;

Response:    Paul Sherman, Daniel Bendler, Arleas Upton Kea

    c.  identify each person who witnessed or has knowledge of the act or omission;
Response:    Wilma Probst and Andrew Nickle

    d.  state all facts upon which you have based your allegation that the specific personnel decision or act constitutes an act of discrimination or retaliation; and

Response:    See Response to Interrogatory 1a.

    e.  state specifically how the specific personnel decision or act for which you are seeking relief was adverse to you.

Response:    See Response to Interrogatory 1a.

Interrogatory No. 2:    Identify each and every incident that you contend subjected you to a hostile work environment based on your race and/or reprisal.

Response:    See Response to Interrogatory 1a.

Interrogatory No. 3:    With regard to the your contentions that you were discriminated against by your supervisors when you received no salary increase in 2005, please explain fully why you believe your 2004 contributions and "the excellent work performed by plaintiff during that period" (amended complaint, paragraph 18), entitled you to "the highest level pay increase in 2005" as demanded in your amended complaint, including which of these contributions were "ignored" by Mr. Bendler and Mr. Sherman (amended complaint, paragraph 18), and the basis for your allegation that you were "doing the same job at the same level of responsibility as [your] non-African-American GS [sic]-13 fellow Management Analysts" (amended complaint, paragraph 9).

5

Response: All of Plaintiff's performance appraisals until 2003 were fully successful and her supervisors indicated she had performed excellent work. In the end of 2004, Mr. Bendler started to downplay Plaintiff's contributions, even though she was continuing to perform her job well.

Interrogatory 4: With respect to your claim of retaliation, please explain fully the basis of your retaliation claim including, but not limited to, the protected EEO activity that forms the basis of the claim and the manner in which Mr. Sherman and Mr. Bendler "have retaliated by substantially changing plaintiff's job responsibilities and intensifying the hostile work environment" (amended complaint, paragraph 19).

Response: See Response to Interrogatory 1a.

Interrogatory No. 5: Identify all other FDIC employees and/or former employees of the Management Services Branch (including, without limitation, those in the Management Support Section of the Management Services Branch) who you contend were similarly situated to you and were treated more favorably.

Response: William Gately, Holly Mattus, David Lok, Gail Kennedy, Wilma Probst, Andrew Nickle

Interrogatory No. 6: Identify in detail any conversations or interviews with any person(s) regarding any of your allegations that the actions of the defendant amounted to unlawful discrimination, retaliation, or violation of the law, and identify each and every statement from, or summary of the conversation or interview with, such person(s).

Response: Objection. Plaintiff provided detailed information to her attorneys. This is protected by the attorney client privilege. Additionally, Plaintiff spoke to an EEO counselor in March 2006. Plaintiff has spoken to numerous other people though she can't recall the specifics of those conversations.

Interrogatory No. 7: Identify each person who you believe has knowledge of the facts set forth in your amended complaint and describe each such person's knowledge.

Response: Wilma Probst and Andrew Nickle know that work was taken away from

6

Plaintiff. Paul Sherman, Daniel Bendler, and Arleas Upton Kea know of their discriminatory and retaliatory conduct toward Plaintiff. Treating person at Lifeworks knows about the emotional angst Plaintiff suffered.

Interrogatory No. 8:   Identify each person that you will or may call as a witness at trial and summarize the expected testimony of such person.

Response:    Plaintiff has not yet determined whom she will call as witnesses. However, she may call all the people mentioned above.

Interrogatory No. 9:   Please state, with specificity, an explanation of the relief sought, including, but not limited to the following: (a) the nature of any damages, equitable or other relief; (b) how you calculated each item claimed; and (c) the facts that support each item claimed (including, without limitation, facts supporting the claim that "plaintiff has suffered and continues to suffer career damage, personal and professional humiliation, and other emotional injuries, that have adversely affected her enjoyment of life," and that "she has had to utilize leave and thus suffered financially" as alleged in the amended complaint, paragraph 21).

Response: Plaintiff has suffered because her career was stagnant in DOA, so she could not advance. This experience has been personally and professionally humiliating for Plaintiff. Additionally, while she was in DOA, she did not enjoy going to work and was sad and stressed out when she was at home, which interfered with her ability to enjoy her family, friends, and social activities. Plaintiff asks for compensatory damages because the way management has treated her has resulted in her gaining weight and feeling very stressed out and humiliated every day. The stress is very hard on her. She also suffers from sleeplessness. Plaintiff never knew if she would get credit for her work and often felt isolated, while in DOA. Plaintiff is always afraid of being mischaracterized in what she does and this often makes her feel very sad. She has taken Zanax for anxiety but she tries not to take it unless she has to.

Plaintiff is allowed $300,000 in compensatory damages, and back pay from March 2004 when

7

she was denied promotion and from 2005 when she was denied a pay raise. Additionally Plaintiff requests attorneys' fees and costs of this litigation.

Interrogatory No. 10: If you have ever suffered or sought treatment or counseling for any physical, nervous, emotional or mental illness or disorder, state or identify with particularity: the nature, extent, and duration of each illness or disorder; identify each health care provider whom you have consulted or who has treated you with respect to such illness or disorder; and if you contend that such illness or disorder was caused by defendant's conduct, identify all evidence and documents supporting your contentions.

Response:    Objection because this question is too broad. However, Plaintiff sought counseling to deal with her sister's illness and death in 2003 and 2004 for a couple of months, through FDIC's Lifeworks Program. She later returned to the Lifeworks Program for help coping with the FDIC's mistreatment of her.

Interrogatory No. 11: Please describe in detail each and every act which you contend constituted an adverse personnel action or that was unlawfully taken against you and for each describe any and all adverse consequences affecting the terms, conditions, or privileges of your employment that resulted from the act, including, but not limited to, your allegations that your position was placed on the FDIC's "surplus list" (amended complaint, paragraph 11), that your supervisor, Daniel Bendler, "wrote plaintiff up for not speaking to her coworkers after he ordered he to do so" (amended complaint, paragraph 16), and that you were "subject[ed] to discipline" (amended complaint, paragraph 18).

Response:    Denial of pay raise, promotion, bonuses, and removal of career enhancing duties. In addition, her professional reputation was damaged.

Interrogatory No. 12: If you contend that you were better qualified than any of the selectees for the CG-13 positions referenced in paragraphs 8, 9, and 18 of the amended complaint, then identify, for each selectee, each area in which you contend that your qualifications were better and state why your qualifications were better. Also identify each area in which the selectees' qualifications were better and why, and each area in which your qualifications and the selectees' qualifications were equivalent and why.

Response:    Pending further discovery, Plaintiff has been successfully performing work in the management analysis field since 1992, which was longer than most other employees in her

8

section. In addition, she has previously performed work equivalent to the CG-13 level while she was a CG-9 and a CG-11.

Interrogatory No. 13: If you have ever complained, formally or informally, in writing or orally, to any entity or individual (including without limitation, any Equal Employment Opportunity counselor or staff member) alleging that an entity or individual has discriminated against you (other than the complaint that forms the basis of the above-captioned action), describe in detail for each such complaint the entity or individual contacted, the date(s) of such contacts, the subject matter(s) of the contacts, the facts of the alleged discrimination, and the resolution, if any, of your complaint.

Response:   In 1993, while at Resolution Trust Corporation, Plaintiff complained that she was denied a career ladder promotion. The complaint was resolved in Plaintiff's favor. In 2000, Plaintiff was an unnamed plaintiff in a class action discrimination lawsuit against the FDIC.

Plaintiff hereby affirms under penalty of perjury that the foregoing interrogatory answers are true and correct to the best of her knowledge and belief.

_1/19/07_  
Date

_Pamela A. Brownfield_

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please provide copies of the following requested documents:

Request No. 1:  All documents that refer, reflect, relate to, are identified in, support, or refute your interrogatory answers or any of the claims, facts, or injuries alleged in your amended complaint.

Response:     All documents will be attached herein.

Request No. 2:  All documents that refer, reflect, relate to, support or refute any claim for damages past, present and future that you claim to have suffered as a result of the allegations set forth in your amended complaint.

Response:     All documents will be attached herein.

Request No. 3:  All documents that refer, reflect or relate to any consultation or treatment by any health care provider or other professional identified in response to Interrogatory Number 10.

Response:     Plaintiff does not have such documents at this time.

Request No. 4:  All documents that refer, reflect or relate to each and every legal proceeding you have been involved in whether federal or state, whether criminal, civil, or administrative.

Response:     All documents will be attached herein.

Request No. 5:  Any and all statements (written, taped or in whatever form they were given) by you or any person interviewed regarding the facts, damages, claims, testimony or evidence related to this case, and any summaries of interviews or conversations with any person that relate to your amended complaint or your employment with FDIC.

Response:     All documents will be attached herein.

Request No. 6:  Each and every document you intend to use as an exhibit or introduce into evidence in this action.

Response:     Plaintiff has not yet determined the documents she will use as exhibits.

Request No. 7:  All logs, diaries, calendars, files, correspondence, memoranda, documents and any personal notes that have any entries related to your discrimination and/or retaliation claims or your employment with FDIC.

Response:     All documents will be attached herein.

**Brownfield v. Bair, 05-cv-2468-EGS**
**Exhibit 24**

Request No. 8: All formal or informal evaluations of your performance while employed at the FDIC, including, without limitation, all annual performance appraisals, any other performance appraisals, awards (including both cash and non-cash awards), commendations, letters of admonition, reprimands, and records of any disciplinary action from the date of your initial employment with the FDIC to the present.

Response:   All documents will be attached herein.

Request No. 9: All documents that support your contention in paragraph 2 of the amended complaint that you have exhausted your administrative remedies.

Response:   All documents will be attached herein.

Request No. 10: All documents evidencing the plaintiff's educational achievements and any professional certifications.

Response:   All documents will be attached herein.

Request No. 11: All documents evidencing any complaints (whether or not formalized in a complaint document) made by plaintiff to the FDIC and/or any supervisors to the present.

Response:   All documents will be attached herein.

Request No. 12: All documents you have received from defendant that discuss or refer to equal employment opportunity and/or merit promotion procedures.
Response:   All documents will be attached herein.

Request No. 13: All documents that relate to any course(s) that plaintiff has taken that covered or addressed in any capacity discrimination, including racial discrimination.

Response:   All documents will be attached herein.

Request No. 14: All documents submitted to, or received from, the FDIC that relate to any personnel actions affecting you during your employment with the FDIC.

Response:   All documents will be attached herein.

Request No. 15: All documents relating to any grievances filed by you or on your behalf.

Response:   All documents will be attached herein.

Request No. 16: With regard to each and every expert witness you intend to call at trial, produce all documents that reveal: (a) his/her area of expertise; (b) the subject matter on which

each such expert is expected to testify; (c) the substance of the facts and opinions to which each expert is expected to testify; (d) a summary of the grounds for each opinion of each such expert; (e) report(s) made by the expert; (f) communications passing by and/or between you and/or anyone on your behalf (including your attorneys) and such expert; (g) the educational and employment background of the expert; (h) scholarly publications of such expert witness in the field of expertise on which he or she may rely or to which he or she may refer or which you intend to offer as evidence in this case; and (i) all information specified in Federal Rule of Civil Procedure 26(a)(2).

    Response:    Plaintiff has not yet determined if she will call any expert witnesses.

    Respectfully submitted,

*/s/ David H. Shapiro (PJR)*
David H. Shapiro
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W., Suite 1290
Washington, D.C. 20005
(202) 842-0300
dhshapiro@swickandshapiro.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2007 a copy of the foregoing Plaintiff Pamela A. Brownfield's Responses to Defendant's First Set of Interrogatories and Request for Production of Documents was served to:

>William S. Jones
>Counsel, Legal Division
>Federal Deposit Insurance Corporation
>3501 N. Fairfax Drive (VS-E6006)
>Arlington, VA 22226

_____
Sarah L. Riger