UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAMELA A. BROWNFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A.No.1:05-cv-02468-EGS |
| ) | |
| SHEILA C. BAIR, ) | |
|   Chairman, ) | |
|   Federal Deposit Insurance Corporation ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S STATEMENT OF GENUINE ISSUES

Pursuant to Local Rule 7.1(h), plaintiff hereby submits her statement of genuine issues in response to the "Statement of Material Facts Not in Dispute" filed by defendant in support of its Motion for Summary Judgment.

**I.   GENERAL RESPONSE TO DEFENDANT'S STATEMENTS.**

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Mitchell v. DCX, Inc.*, 274 F.Supp.2d 33, 39 (D.D.C. 2003). In a discrimination and retaliation action such as this, the material issues are the FDIC's true motives for its actions against Ms. Brownfield and whether the reduction of her duties caused objectively tangible harm. Yet, for the most part, the facts recited in defendant's statement are not "material" to these issues. Thus, even if those facts are accepted, they do not entitle defendant to judgment. *See United States v. Winstead,* 74 F.3d 1313, 1320 (D.C. Cir 1996) ("material fact" defined as "a fact that would be of importance to a reasonable person in making a decision about a particular matter or transaction."). Accordingly, plaintiff below describes the material facts at issue and

then disputes the only material issues raised by defendant.

**II.     Statement of Material Facts in Genuine Dispute.**

*1.     Was Ms. Brownfield objectively harmed when Mr. Bendler Took Away All of Her Job Duties?*

- Ms. Brownfield's position as coordinator for the DOA review process directives was taken away without explanation after she complained of discrimination. DX 10, Brownfield Dep. at 109-110.

- Ms. Brownfield's CFOA work was redistributed to other MSS employees in 2005. PX 2, Probst-Levy Aff. at 3 (stating that Ms. Brownfield's CFOA work diminished while other employees' CFOA work increased); DX 10, Brownfield Dep. at 111 (testifying that in 2005 she was only left with a "little piece" of the CFOA responsibilities).

- Ms. Brownfield was left with absolutely no work for several weeks. PX 16, 2005-2006 at bate-stamp 37 (noting that she had no work to do from January 5 to January 31, 2006 and observed that others were working overtime); DX 10, Brownfield Dep. at 7 (recalling times when she had no work to do and others were busy).

- Several coworkers will testify that Ms. Brownfield resorted to asking for work from her colleagues because her supervisor would not give her anything to do. PX 1, Nickle Aff. at 3 ("I know Ms. Brownfield has been low on work because she asked me for something to do."); PX 5, Mattus Dep. at 38-39 (testifying that Ms. Brownfield helped her because she was overwhelmed and Ms. Brownfield

2

had no work).

- Mr. Bendler admits that Ms. Brownfield frequently asked for work since 2005. Bendler Dep. at 99.

2. *Does Mr. Bendler have a bias against African Americans?*

- Mr. Bendler promoted a white employee without competition to the CG-14 level. DX 6, Bendler Dep. at 24-25.

- Mr. Bendler would not assign work to Ms. Brownfield but when a white employee requested work he assigned her some of Ms. Brownfield's work so that the white employee would have something to work on. DX 10, Brownfield Dep. at 8; DX 6, Bendler Dep. at 99; PX 11, Sept. 1, 2004 e-mail from Bendler to Probst-Levy.

- Mr. Bendler did not promote a single African American to the CG-13 level when he made three selections. DX 27, Sherman Dep. at 143-144.

- Mr. Bendler favored two white employees. PX 1, Nickle Aff. at 5.

- Ms. Brownfield was the sole African American employee in MSS and there were no African Americans above the CG-13 level in MSB. DX 8, Brownfield 2005 Aff. at 2-3.

- Mr. Bendler refused to assign Ms. Brownfield any work, but her white coworkers were all busy and working overtime. PX 16, 2005-2006 e-mails from Brownfield to Bendler requesting work at 37.

3. *Can the FDIC avoid liability for Mr. Bendler's race discrimination against Ms. Brownfield because Mr. Sherman approved his assessments of her?*

Mr. Sherman admits that he relied on Mr. Bendler's written assessments of Ms.

3

Brownfield when she was denied a pay raise and received the lowest raise available. DX 27, Sherman Dep. at 105 (testifying that senior management relied on the immediate supervisor's write-up).

4. *Did Mr. Bendler remove Ms. Brownfield's work responsibilities and deny her a raise because she filed an EEO complaint against him?*

- Mr. Bendler immediately began taking work away from Ms. Brownfield after she complained of discrimination. PX 17, Brownfield Declaration.

- Ms. Brownfield's workload dwindled to nothing within months of her complaint. PX 16.

- Ms. Brownfield's work on the DOA review process directives disappeared right after she complained of race discrimination. PX 17, Brownfield Declaration (Decl.) at ¶ 3.

- Less than two months after Ms. Brownfield filed a complaint against Mr. Bendler, he substantially diminished her work on the CFOA project. *Id.* at ¶ 2 (EEO complaint filed on May 13, 2005); *id.* at ¶ 4 (stating that by July 2005, Mr. Bendler had diminished her CFOA responsibilities significantly).

- The fact that Mr. Bendler continued to diminish Ms. Brownfield's workload *while* he was being investigated regarding her complaint against him raises an inference of causation. *Id.* at ¶ 2 (EEO complaint filed on May 13, 2005).

5. *Did Mr. Bendler Mischaracterize Ms. Brownfield's Job Responsibilities To Cover Up His Discriminatory and/or Retaliatory Motive?*

There is evidence that Mr. Bendler has made the following misstatements about Ms. Brownfield's work performance:

4

- Mr. Bendler claims that he assigned the procurement card project to Mr. Lok and Ms. Brownfield to work on jointly. DX 6, Bendler Dep. at 90. *But see* DX 10, Brownfield Dep. at 49 (testifying that Mr. Lok asked her to help him finish the project); PX 6, Lok Dep. at 65-66 (testifying that he asked Ms. Brownfield to help him).

- Mr. Bendler claimed that he told Ms. Brownfield he was dissatisfied with her progress while she was working on the project, DX 6, Bendler Dep. at 91. *But see* PX 6, Lok Dep. at 140 (testifying that Mr. Bendler never asked about Ms. Brownfield's work until weeks after the project was finished).

- Mr. Bendler claimed it would be a "huge stretch" to say that Ms. Brownfield helped Ms. Mattus with budget work. DX 6, Bendler Dep. at 129. *But see* PX 5, Mattus Dep. at 38 (testifying that Ms. Brownfield was a big help to her).

- Mr. Bendler claims he had to reassign Ms. Brownfield's summaries on the CFOA project because she was not going to meet her deadline. *But see* PX 11, Sept. 1, 2004 e-mail from Bendler to Probst-Levy (Mr. Bendler telling Ms. Probst-Levy that he had assigned some of Ms. Brownfield's work to Ms. Kennedy because "Gail had some down time and asked Pam if she wanted help with some of the HRB highlights.").

- To justify taking work away from Ms. Brownfield, Mr. Bendler claims that there was a decline in work overall in the unit. DX 5, Bendler Aff. II at ¶ 4. *But see* PX 2, Probst-Levy Aff. at 3 (stating that Ms. Brownfield's CFOA workload diminished while other MSS employees' CFOA workload increased); PX 5,

Mattus Dep. at 38-39 (testifying that she was overwhelmed with work while Ms. Brownfield had little to do); DX 10, Brownfield Dep. at 111 (testifying that in 2005 she was only left with a "little piece" of the CFOA responsibilities); PX 16, 2005-2006 at bate-stamp 37 (noting that she had no work to do from January 5 to January 31, 2006 and observed that others were working overtime); DX 10, Brownfield Dep. at 7 (recalling times when she had no work to do and others were busy); PX 1, Nickle Aff. at 3 (testifying that he has a constant flow of work).

IV. **Specific Responses to "Defendant's Statement of Material Facts as to Which There is No Genuine Dispute."**[1]

**Statement No. 2:** Subsequently, Mr. Sherman competitively selected her for a grade 11/12 Management Analyst position in his section. Brownfield Dep. at 16; Sherman Aff. II at 2.

**Response No. 2:** Not material. When the claims in this case arose, Mr. Sherman was not Ms. Brownfield's direct supervisor; he merely approved Mr. Bendler's discriminatory and retaliatory acts against Ms. Brownfield. It is Mr. Bendler's motive that is at issue.

**Statement No. 3:** While he was her immediate supervisor, Mr. Sherman gave Ms. Brownfield substantial performance awards (including one for $2,000 in October 2000), as well as favorable performance evaluations. Brownfield Dep. at 20-25; Award Nomination (Ex. 3); Performance Evaluations 1998-2002 (Exs. 22-1 through 22-5).

**Response No. 3:** *See* Response No. 2.

---

[1] Defendant's Statement No.'s 1, 5, 8-10, 12-14, 17, 22-25, 29, 36-41, 43-48, 56 and 57 are not material to either motive, pretext, or whether a reasonable employee would be deterred from EEO activity by Bendler's diminution of Ms. Brownfield's duties, and are therefore not addressed herein.

6

**Statement No. 4:**   Ms. Brownfield's written comments on her performance evaluations indicate that she was an enthusiastic and engaged employee during this time period, who had a good relationship with Mr. Sherman. See Performance Evaluations 1998-2001 (Exs. 22-1 through 22-4).

**Response No. 4:**   *See* Response No. 2.

**Statement No. 6:**   Ms. Brownfield had known Mr. Bendler since he had transferred into the section from the FDIC's Office of Inspector General (OIG) in 1996 or 1997. Brownfield Aff. II (Ex. 9) at 1; Brownfield Dep. at 28. They interacted daily on a first-name basis and had a cordial relationship. Id.; see, e.g., E-mails in 2003 between Bendler and Brownfield (Ex. 12).

**Response No. 6:**   Not material. Ms. Brownfield was cordial to Mr. Bendler before she realized that he was discriminating against her based on her race.

**Statement No. 7:**   Mr. Bendler prepared Plaintiff's performance evaluation in 2003, which she characterized as "outstanding." Brownfield Dep. at 29; Performance Evaluation 2003 (Ex. 23).

**Response No. 7:**   Not material. Ms. Brownfield earned this evaluation. Mr. Bendler acknowledged Ms. Brownfield's performance on this evaluation because he did not have to compare her with white employees.

**Statement No. 11:**   The interviewing panel (Mary Carmichael, from the OIG's office, Jerie Kitchens, the Special Assistant to DOA Division Director Arleas Upton Kea, and Rick Marlatt, an MSB employee from another section who was not supervised by Dan Bendler) used a structured interview format in which all candidates were asked the same questions. Carmichael Dep. (Ex. 11) at 45, 53; Kitchens Dep. (Ex. 20) at 28; Marlatt Dep. (Ex. 21) at 41-44. The interview questions and benchmark answers were approved in advance by the Human Resources Branch of DOA. See E-mails to/from HRB (Ex. 13).

7

**Response No. 11:** Not material. However, there is a question of fact as to whether Mr. Bendler's motives for employing the structured interview process were a facade to allow him to discriminate against Ms. Brownfield. Mr. Bendler could have promoted any of his four CG-12 employees through accretion of duties promotions. DX 27, Sherman Dep. at 129; PX 4, Ingra Jones Dep. at 42-44. An accretion of duties promotion would require an independent evaluation of the duties of all four of the CG-12's under Mr. Bendler – black or white. Instead, Bendler chose to have a competition over which he had ultimate control. The result, he promoted all three of his white CG-12's and rejected Ms. Brownfield's application – his only African American employee eligible for the promotion.

**Statement No. 15:** Plaintiff did not perform well during the interview. Brownfield Aff. I (Ex. 4) at 4, 6; Brownfield Dep. at 38.

**Response No. 15:** Disputed. When Ms. Brownfield was interviewed, she was still grieving and did not feel emotionally ready for an interview. DX 10, Brownfield Dep. at 33. Under the circumstances, Ms. Brownfield was dissatisfied with her performance. *Id.* at 38. However, Ms. Brownfield's opinion of her own performance is not probative of her qualifications. Indeed, Mr. Lok received a promotion, and he believed that he did not perform well in the interview. *Id.* at 38-39.

**Statement No. 16:** She was not among the top four candidates whose names were forwarded by the initial interview panel for further consideration by Mr. Bendler and Mr. Sherman, and therefore she was not selected for one of the grade 13 positions. Bendler Aff. I at 4; Sherman Aff. I at 4.

**Response No. 16:** Not material. However, there is a question of fact as to whether Mr.

Bendler's motives for employing the structured interview process were a facade to allow him to discriminate against Ms. Brownfield, because there is evidence that Mr. Bendler could have promoted the people he ultimately chose to promote (and one of the people he did not promote, Ms. Brownfield) through accretion of duties promotions. DX 27, Sherman Dep. at 129; PX 4, Ingra Jones Dep. at 42-44.

> **Statement No. 18:** In December 2004, as part of an FDIC-wide downsizing process, Plaintiff's grade 12 position was listed (along with 130 other DOA positions) as a "surplus" position due for eventual elimination. Bendler Aff. I at 4-5; Sherman Aff. I at 4.

**Response No. 18:** There is a question of material fact as to whether Mr. Bendler's motives for placing his only African American subordinate's position on the surplus list were discriminatory, and therefore, create an inference of discrimination against Ms. Brownfield. DX 6, Bendler Dep. at 122.

> **Statement No. 19:** Plaintiff's position was deemed "surplus" because after due consideration, it was determined that it wasn't needed to accomplish the work remaining in MSB. Sherman Dep. at 22-39.

**Response No. 19:** There is a question of material fact as to whether Mr. Bendler's motives for placing his only African American subordinate's position on the surplus list were discriminatory, and therefore, create an inference of discrimination against Ms. Brownfield. DX 6, Bendler Dep. at 122.

> **Statement No. 20:** Ms. Brownfield became withdrawn and uncommunicative, both with other MSS staff and with management. Bendler Aff. I at 5.

**Response No. 20:** There is a question of material fact regarding this assertion. Although Ms. Brownfield did not feel like socializing after Mr. Bendler promoted all of her non-African American peers but not her, she was not "withdrawn and uncommunicative." DX 10, Brownfield Dep. at 63. She simply wanted to focus on work. *Id.*

**Statement No. 21:** Finally, matters came to a head when Ms. Brownfield verbally lashed out at Mr. Bendler when he tried to meet with her concerning her performance issues in January 2005. As a result of her actions during this abortive meeting, Mr. Bendler sent her a counseling memo via e-mail on January 25, 2005. Id.; see Informal Counseling E-mail (Ex. 17).

**Response No. 21:** There is a question of material fact regarding this assertion. Ms. Brownfield did not lash out at Mr. Bendler. PX 15, January 31, 2005 Memo from Brownfield to Bendler. Ms. Brownfield expressed to him that she did not feel like socializing after he had passed her over for a promotion and declared her position surplus. *Id.*

**Statement No. 26:** As a result of her relatively poor corporate contributions during 2004, in early 2005 Ms. Brownfield was ranked in Group V (the lowest five percent of employees) under the FDIC's new Contribution-Based Compensation (CBC) program that had been implemented for all non-bargaining unit employees that year. Bendler Aff. I at 2-3, 5; Sherman Aff. I at 2-3.

**Response No. 26:** Disputed. There is evidence that Mr. Bendler minimized and omitted Ms. Brownfield's work assignments to justify giving her no pay raise. *See* Plaintiff's Opposition to Summary Judgment, Facts, Section VI. Mr. Bendler gave Ms. Brownfield a significantly shorter write-up than her non-African American colleagues. DX 6, Bendler Dep. at 185; PX 10, 2005 CBC Rankings.

10

**Statement No. 27:** In accordance with the parameters of the CBC program, she did not receive a pay raise for 2005 due to her Group V ranking, which was reviewed by senior DOA management, including Deputy Director Glen Bjorklund and Division Director Arleas Upton Kea, who is both an African American woman and head of the FDIC's diversity awareness program. Id.; Bjorklund Aff. at 2-3; Kea Aff. I at 1.

**Response No. 27:** Disputed. There is evidence that Mr. Bendler minimized and omitted Ms. Brownfield's work assignments to justify giving her no pay raise. See Plaintiff's Opposition to Summary Judgment, Facts, Section VI.

**Statement No. 28:** Mr. Bendler, Plaintiff's first-line supervisor, ranked the eight non-bargaining unit employees in his section by assessing their 2004 work-related contributions, but did not assign any of his employees to a CBC compensation group. Bendler Aff. I at 2.

**Response No. 28:** Not material. However, there is evidence that Mr. Bendler minimized and omitted Ms. Brownfield's work assignments to justify giving her no pay raise. See Plaintiff's Opposition to Summary Judgment, Facts, Section VI. His motive for giving Ms. Brownfield a significantly shorter write-up than her non-African American colleagues is in genuine issue. DX 6, Bendler Dep. at 185; PX 10, 2005 CBC Rankings.

**Statement No. 30:** Plaintiff was expected to review approximately half of 112 bank card holder accounts but she only reviewed 6, and other staff members completed the vast majority of the reviews. Id. at 2-3.

**Response No. 30:** Disputed. There is evidence that Mr. Bendler did not speak with Ms. Brownfield about this project and that Ms. Brownfield did not know the project's end date, PX 6, Lok Dep. at 75-76, and that Ms. Brownfield completed all of the files that Mr. Lok assigned to her. PX 6, Lok Dep. at 71, 75, 158.

**Statement No. 31:** Plaintiff was asked to write twelve Accountability Unit Review Summaries, but she only completed eight, and the remaining four had to be reassigned. Id. at 3. Of the eight summaries that she completed, three had to be rewritten by other staff members. Id.

**Response No. 31:** Disputed. Mr. Bendler's reason for taking the responsibility of the summaries from Ms. Brownfield is in genuine dispute. Mr. Bendler has stated that he assigned the summaries to Ms. Kennedy because "Gail had some down time and asked Pam if she wanted help with some of the HRB highlights." PX 11, Sept. 1, 2004 e-mail from Bendler to Probst-Levy. Ms. Kennedy testified that she saw no reason that Ms. Brownfield could not have finished the summaries herself. PX 12, Kennedy Dep. at 101. Ms. Brownfield had completed the first eight summaries and was on track to finish the summaries by the deadline when Mr. Bendler took some of the duties away from her. DX 10, Brownfield Dep. at 55. Ms. Kennedy testified that she did write four of the twelve summaries, but that those four were among the simpler summaries that did not take as long to complete. PX 12, Gail Kennedy Dep. at 92-96 (testifying that she wrote some of the simpler summaries). Finally, it was common practice for summaries to be reviewed and re-worked. DX 10, Brownfield Dep. at 53.

**Statement No. 32:** During the next phase of the CBC process, Mr. Bendler met with the other section chiefs in MSB and Mr. Sherman, the Assistant Director, to discuss the relative contributions of all 16 non-bargaining unit employees in the branch. Id. at 2.

**Response No. 32:** Disputed. Mr. Sherman testified that Ms. Brownfield was placed in Group V, which received no pay raise, based entirely on Mr. Bendler's report to his supervisors. DX 27, Sherman Dep. at 105.

**Statement No. 33:** Mr. Sherman and his section chiefs compiled a ranked list of the 16 employees, and Plaintiff was viewed as the least significant contributor due to her poor performance in 2004. Sherman Aff. I at 2. The ranked list of the 16 MSB employees, along with lists from other DOA branches and regional offices, were sent to the Human Resources Branch ("HRB"), where a master list of the 200 plus non-bargaining unit DOA employees was developed through the use of a formula driven spreadsheet tool, after which the five compensation groups were determined on a percentage basis. Id. Mr. Sherman also participated in the final stage of the CBC process, where senior DOA management consisting of the Division Director and Deputy Director, and the heads of the four branches and five regional offices, reviewed HRB's breakdown of the master list into the five compensation groups. Id.

**Response No. 33:** Disputed. Mr. Sherman testified that Ms. Brownfield was placed in Group V, which received no pay raise, based entirely on Mr. Bendler's report to his supervisors. DX 27, Sherman Dep. at 105.

**Statement No. 34:** DOA Director Arleas Upton Kea (an African-American woman) worked with the senior management team which reviewed all of the nomination forms and group placements. Kea Aff. I at 1.

**Response No. 34:** Not material. Mr. Sherman testified that Ms. Brownfield was placed in Group V, which received no pay raise, based entirely on Mr. Bendler's report to his supervisors. DX 27, Sherman Dep. at 105. Ms. Kea's involvement in reviewing Mr. Bendler's assessment of Ms. Brownfield without questioning the basis for that assessment is not material. DX 18 at Response to Question 3; DX 19 at ¶ 7 (admitting that the only information reviewed by management to determine the pay raise group are the write-ups submitted by the direct supervisor, i.e., for Ms. Brownfield, Mr. Bendler's nomination form which minimized her accomplishments).

**Statement No. 35:**    Deputy Director Bjorklund stated that Plaintiff's placement in Group V was not discriminatory and noted that Ms. Brownfield had "worked with mostly the same management staff during her tenure with the FDIC," and in past years, when her performance was good, she was "recognized and promoted for her performance and accomplishments." Bjorklund Aff. at 3.

**Response No. 35:**    Not material. Mr. Bjorklund's opinion is not relevant; only the jury can determine what motivated Mr. Bendler.

**Statement No. 42:**    In her formal EEO complaint, Plaintiff elected not to pursue administratively any independent claims of discrimination for adverse actions that occurred before she was denied a pay raise in March 2005. Instead, her formal complaint made the following allegations:
> I received notice that I would not be getting a pay increase under the CBC program. I was the only one eligible in my section (and I think my branch) to be passed over for a CBC raise. I am the only African-American in my section. Since I reacted negatively to being placed on the surplus list – the only one in my section to have this happen (and one of three people – an older woman and a deaf Asian male – in the branch) – I have been harassed by management to the point that I now suffer from a hostile work environment. . . .
> I am the only person in my section not to get a raise and I am the only Black person in my section. It is close to the same in my branch.

Id. at 2.

**Response No. 42:**    Not disputed or material. However, these earlier acts of discrimination, although not before the court independently, do support her timely discrimination and retaliation claims. *See National Ry. Corp. v. Morgan*, 536 U.S. 101, 102 (2002) (holding that evidence of prior discrimination may be considered as "background evidence" of discrimination).

**Statement No. 49:**  Mr. Bendler, Mr. Sherman and Ms. Steely have explained that in February 2006, Assistant Director Steely of ASB (who was completely unaware of Plaintiff's prior EEO complaint at the time, see Steely Aff. at 2) became concerned that Plaintiff was spending too much time in ASB's work area and was distracting Ms. Steely's employees as a result of her excessive socializing. Bendler Aff. II at 2-4; Sherman Aff. II at 4-5; Steely Aff. at 2-3, 4-5.

**Response No. 49:**  Disputed. Mr. Bendler testified that he did not speak with Ms. Steely before reprimanding Ms. Brownfield. DX 6, Bendler Dep. at 176. He also admitted that Ms. Steely was not very popular with her African American staff members. *Id.* at 177.

**Statement No. 50:**  Ms. Steely brought her concerns to Assistant Director Sherman, as the head of MSB, who then instructed Mr. Bendler, as Plaintiff's immediate supervisor, to caution Ms. Brownfield that a complaint had been made. Id.; Bendler Aff. II at 2-4; Sherman Aff. II at 4-5.

**Response No. 50:**  Disputed. Mr. Bendler did not caution Ms. Brownfield about Ms. Steely's dislike for her (or other African Americans); he reprimanded her based on Ms. Steely's complaint. DX 10, Brownfield Dep. at 121; DX 9, Brownfield 2006 Aff. at 3 (noting that Bendler said she was causing trouble).

**Statement No. 51:**  Mr. Bendler relayed Ms. Steely's concerns to Plaintiff in a low key and non-threatening manner. Bendler Aff. II at 3-4.

**Response No. 51:**  Disputed. Mr. Bendler did not caution Ms. Brownfield about Ms. Steely's dislike for her (or other African Americans); he reprimanded her based on Ms. Steely's complaint. DX 10, Brownfield Dep. at 121; DX 9, Brownfield 2006 Aff. at 3 (noting that Bendler accused her of causing trouble).

**Statement No. 52:** Mr. Bendler has explained that the variations in Plaintiff's work assignments resulted from changes in the way that business was conducted in MSS, due in part to a decline in overall MSS work. Bendler Aff. II at 4-7; see also Sherman Aff. II at 5-6.

**Response No. 52:** Disputed. There is evidence that Ms. Brownfield's colleagues had sufficient work at the same time that Mr. Bendler claims that there was a decline in overall work. *See* PX 2, Probst-Levy Aff. at 3 (stating that Ms. Brownfield's CFOA workload diminished while other MSS employees' CFOA workload increased); DX 10, Brownfield Dep. at 111 (testifying that in 2005 she was only left with a "little piece" of the CFOA responsibilities); PX 16, 2005-2006 at bate-stamp 37 (noting that she had no work to do from January 5 to January 31, 2006 and observed that others were working overtime); DX 10, Brownfield Dep. at 7 (recalling times when she had no work to do and others were busy); PX 5, Mattus Dep. at 38-39 (testifying that she was overwhelmed with work while Ms. Brownfield had little to do).

**Statement No. 53:** Ms. Brownfield provided comments detailing the work she accomplished in 2005 which she added to her PFP form in February 2006 (and which is attached to her Formal Complaint of Discrimination filed in March 2006). See Formal Complaint 2006 (Ex. 16), Plaintiff's attached PFP form at Section V – Employee Acknowledgment/Comments.

**Response No. 53:** Not disputed. However, there is evidence that the review was based solely on Mr. Bendler's write-up, not Ms. Brownfield's additions. DX 27, Sherman Dep. at 105.

**Statement No. 54:** Mr. Bendler has explained that work in MSS is cyclical, and that variations in Plaintiff's work assignments resulted from changes in the way that business was conducted in MSS, due in part to a decline in overall MSS work. Bendler Aff. II at 4-7.

16

**Response No. 54:**    Disputed.    There is evidence that Ms. Brownfield's colleagues had sufficient work at the same time that Mr. Bendler claims that there was a decline in overall work. *See* PX 2, Probst-Levy Aff. at 3 (stating that Ms. Brownfield's CFOA workload diminished while other MSS employees' CFOA workload increased); DX 10, Brownfield Dep. at 111 (testifying that in 2005 she was only left with a "little piece" of the CFOA responsibilities); PX 16, 2005-2006 at bate-stamp 37 (noting that she had no work to do from January 5 to January 31, 2006 and observed that others were working overtime); DX 10, Brownfield Dep. at 7 (recalling times when she had no work to do and others were busy).

**Statement No. 55:**    Mr. Sherman also confirmed that there was a reduced need for staff based on changes in the review process, and that this was consistent with Ms. Brownfield's position being designated as surplus. Sherman Aff. II at 5-6.

**Response No. 55:**    Disputed.    There is evidence that Ms. Brownfield's colleagues had sufficient work at the same time that Mr. Bendler claims that there was a decline in overall work. *See* PX 2, Probst-Levy Aff. at 3 (stating that Ms. Brownfield's CFOA workload diminished while other MSS employees' CFOA workload increased); DX 10, Brownfield Dep. at 111 (testifying that in 2005 she was only left with a "little piece" of the CFOA responsibilities); PX 16, 2005-2006 at bate-stamp 37 (noting that she had no work to do from January 5 to January 31, 2006 and observed that others were working overtime); DX 10, Brownfield Dep. at 7 (recalling times when she had no work to do and others were busy).

Respectfully submitted,

_____/s/_____
David H. Shapiro
D.C. Bar No. 961326
Sarah L. Riger
D.C. Bar No. 486591
Swick & Shapiro, P.C.
1225 Eye Street, N.W., Suite 1290
Washington, DC  20005
Tel. (202) 842-0300
Fax (202) 842-1418
dhshapiro@swickandshapiro.com
slriger@swickandshapiro.com
Attorneys for Plaintiff