UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____    )
                               )
PAMELA A, BROWNFIELD           )
                               )
          Plaintiff,           )
                               )
                               )   Civ. No. 05-2468(EGS)
     v.                        )
                               )
SHEILA C. BAIR,[1] CHAIRMAN,   )
FEDERAL DEPOSIT INSURANCE      )
CORPORATION                    )
          Defendant.           )
_____    )


**MEMORANDUM OPINION**

This case involves an employment dispute against the Federal Deposit Insurance Corporation ("FDIC") in which the Plaintiff, an African American female, alleges that she was subject to a hostile work environment based on her race, was denied a pay raise based on her race, and was retaliated against after engaging in protected EEO activity. Am. Compl. ¶¶ 20-25. She brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII"). Pending before

_____
[1] The Amended Complaint, filed on December 1, 2006, named as defendant Martin J. Gruenberg, in his official capacity as Acting Chairman of the FDIC. Sheila C. Bair was sworn in as Chairman of the FDIC on June 26, 2006 and is therefore substituted in her official capacity for Mr. Gruenberg as the defendant in this case pursuant to Fed. R. Civ. P. 25(d).

the Court is Defendant's Motion for Summary Judgment. Upon consideration of the Motion, the response and reply thereto, the applicable law and the entire record, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion.

I.   **Background**

Plaintiff is a 47-year-old African American female currently employed by the FDIC. She began working at the FDIC as a Grade 5 secretary in 1990 and has worked her way up to become a Grade 12 Management Analyst. Pl.'s Opp'n at 2. In 1996, Plaintiff joined the Management Support Section ("MSS") of the Management Services Branch ("MSB") within the Division of Administration ("DOA"). *Id.* From 2000 to 2006, she served as a Grade 12 Management Analyst. Her first line supervisor was a Mr. Bendler (head of MSS) and his superior was a Mr. Sherman (head of MSB). *Id.* at 3. Ms. Upton Kea is the Director of the Division that includes MSB. Def.'s Mot. at 5.

In 2004, Plaintiff's first-line supervisor, Mr. Bendler, determined that some of the work being done by the four Grade 12 Management Analysts could be considered Grade 13 work. Bendler Dep. 32:15-22, March 15, 2007. After conferring with the Human Resources Department ("HR"), he decided to create two Grade 13 analyst positions. *Id.* at 54:10-15. The position announcements were posted in late 2003. Plaintiff applied for the position, as did the other three Grade 12 analysts in MSS and 3 other

candidates from other FDIC branches.  All seven candidates were considered "best qualified" and were forwarded by HR to Mr. Bendler to schedule first round interviews. *Id*. at 135:19-20. Mr. Bendler selected a panel of three non-MSS Grade 14 employees to conduct the structured first round interview.  During the first round interview, all candidates were asked the same questions. Def.'s Mot. at 4.

In between the time applications were due and interviews were conducted, Ms. Brownfield's sister became terminally ill and eventually passed away.  Brownfield Aff. I p. 4, August 9, 2005. Ms. Brownfield was out of the office when the first interviews were held.  Mr. Bendler and Mr. Sherman requested a special extension from HR so that the roster could be held open another thirty days so Ms. Brownfield could interview for the position. Bendler Dep. 64:20-65:8.  Two weeks after returning from leave, Plaintiff participated in the same structured interview before the same panel that had evaluated the other candidates. Brownfield Aff. I p. 4.  By her own admission, she did not perform well, and she was not referred on to the second round. *Id*. at 4,6.  Plaintiff's three Grade 12 coworkers (two Caucasian, one Asian) and one other candidate (African American) from another FDIC branch were referred to the second round interviews with Mr. Bendler and Mr. Sherman.  Though there were only two positions originally announced, all three of the Grade 12

3

analysts from MSS were promoted to Grade 13. Bendler Dep. 56:2-11. Consequently, Plaintiff became the only Grade 12 left in her section. Of the seven candidates who applied for the promotion, the four that were rejected were African American. Pl.'s Opp'n at 6.

Plaintiff learned of her non-selection in March 2004. She contends that all the Grade 12 employees could have been promoted if Mr. Bendler had wanted to promote them. Relying on the opinion of the FDIC HR specialist, Plaintiff argues that Mr. Bendler could have asked HR to do a "desk audit" of all the Grade 12 employees and subsequently promoted them all non-competitively if HR determined they were all doing Grade 13 work. *Id.* at 4. Plaintiff argues that this was likely because her colleagues did not experience any change in job duties after being promoted to Grade 13. *Id*. Plaintiff argues that Mr. Bendler's decision to compete the Grade 13 positions evidences a policy of refusing to promote African Americans above Grade 12. Plaintiff points to the fact that of the 27 employees in the MSB, only three are Grade 12 employees and they are all African American. All higher graded employees are white or Asian. Am. Compl. ¶ 14.

In December 2004, Plaintiff learned her position had been placed on the "surplus list" which meant it would be eliminated as part of a downsizing effort in August 2006. *Id*. ¶ 14. Plaintiff's position was the only one of the eight within MSS to

be designated as surplus, though it was one of 130 within the overall division.  Def.'s Mot. at 5.  Plaintiff contends that the surplus decision was race-based because she was the only African American employee in her section and the only one to have her position eliminated.  Am. Compl. ¶ 11.  She was also the most senior employee in the MSS.  Bendler Dep. 157:11-16.  Defendant counters that the FDIC's downsizing effort had been going on for years, that the changes in the banking industry necessitated a leaner workforce and that Plaintiff's work had been drying up slowly over the past years such that her position could not be justified.

After the promotion denial and the scheduled elimination of her position, Plaintiff stopped speaking to most of her coworkers and to MSS management.  Def.'s Mot. at 5.  As a result, Mr. Bendler sent her a "counseling email" on January 25, 2005, attempting to "start a healthy dialogue" about the communication problems they were having and get 2005 off on a "better foot."  Ms. Brownfield considered the email to be the "start of a derogatory file on her," though the email clearly stated it would not be included in any personnel file.  Def.'s Mot., Ex. 17.

In February 2005, Plaintiff was informed that she had been placed into Group V, the lowest group, in the FDIC's Contribution for Compensation (CBC) program.  Am. Compl. ¶ 17.  The program grouped all non-bargaining unit FDIC employees into five

5

categories based on their overall contributions to the corporation over the previous year and provided varying pay increases based upon group placement.  Def.'s Reply at 5.  Employees in Group I received the highest raise while those placed in Group V did not receive any pay raise from the CBC pool.  Plaintiff contends that her placement in Group V was "part of a scheme to discriminate against Plaintiff and create a hostile work environment for her at FDIC so she would leave the organization." Am. Compl. ¶ 18. She also alleges that the denial of the pay raise is "separately actionable as a blatant act of race-based discrimination."  *Id.*  Plaintiff argues that she has properly raised an inference of discrimination because she was the only person in her section who did not get a raise that year, while all of her non-African American colleagues were given raises "based in part on her own work."  *Id.*

Defendant argues that Plaintiff's non-selection for the Grade 13 promotion, the placement of her position on the surplus list, and the January 25 "counseling email" may not be pursued as individual claims due to failure to exhaust her administrative remedies.  Def.'s Mot. at 8.  Plaintiff does not dispute this.  However, this information may be considered as "background information" to support her discrimination claim.  *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

6

Accordingly, the Court considers those incidents as "background" to her properly exhausted claims only.

## II. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In considering whether there is a triable issue of fact, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Mastro v. Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). "As employers rarely maintain records directly evidencing discrimination, an added measure of rigor or caution is appropriate in applying this standard to motions for summary judgment in employment discrimination cases." *Woodruff v. Peters*, 482 F.3d 521, 526 (D.C. Cir. 2007)(quoting *Aka v. Wash. Hosp.*

*Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997) *judgment vacated*, 124 F.3d 1302 (D.C. Cir. 1997) (en banc)).

**III. DISCUSSION**

    **A.  Plaintiff has abandoned her hostile work environment claim**

Plaintiff alleged in her amended complaint that she had been subjected to a hostile work environment based on her race. Am. Comp. ¶¶ 20-21. In support of this claim, she identified three discrete actions that she argued constituted a hostile work environment, including her non-selection for a promotion to Grade 13 in March 2004, the placement of her position on a "surplus list" of positions that would eventually be eliminated as a part of the FDIC's downsizing effort, and the receipt of a "counseling email" in January 2005 from Mr. Bendler advising her of inappropriate workplace behaviors. On May 13, 2005, Plaintiff filed her first formal EEO complaint after she had been denied a pay raise in March 2005. In that complaint, Plaintiff did not raise these actions as independent claims, but rather included them as "background information" to support her allegation that the pay raise denial was based upon race discrimination. Def.'s Mot., Ex. 15. In its Motion, Defendant argues both that Plaintiff has failed to administratively exhaust these claims in so far as they constitute discrete employment actions and also that they do not support a claim of hostile work environment.

Def.'s Mot. at 8.  In her opposition, Plaintiff does not respond to these arguments, nor does she defend her claim of hostile work environment in any fashion.  Defendant's Motion on Plaintiff's hostile work environment claim is therefore **GRANTED**.

### B.   **Plaintiff's race discrimination claim for denial of pay raise**

Title VII provides that all personnel actions affecting federal employees shall be made free from discrimination based on race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-16.  Plaintiff contends that she was discriminated against on the basis of race when she was ranked in the lowest five percent of FDIC non-bargaining unit employees in 2005 as a part of FDIC's Contribution-Based Compensation ("CBC") Program.  Am. Compl. ¶ 18.  Because she was ranked as the lowest contributor in her section and ultimately placed in Group V, Plaintiff did not receive a pay raise that year. *Id.*

In the absence of direct evidence of racial discrimination, the Court must analyze Plaintiff's claims in accordance with the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *See McDonnell Douglas*, 411 U.S. at 802; *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002).  "[T]o state a prima facie claim of disparate

treatment discrimination, the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). Should the plaintiff succeed in making out a *prima facie* case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory. *Stella*, 284 F.3d at 144.

The Court finds that Plaintiff has succeeded in laying out a *prima facie* case of discrimination. As an African American, she is a member of a protected class. She has alleged a denial of a monetary benefit in connection with a performance evaluation, which this Circuit has conclusively held to be an adverse employment action. *Russell v. Principi*, 257 F.3d 815, 817 (D.C. Cir. 2001). Plaintiff has also alleged facts raising an inference of discrimination. Plaintiff was the only employee in her section denied the pay-raise and she was the only African American. Plaintiff avers that in order to justify this result, her accomplishments were minimized and her colleagues were given credit for her work. Pl.'s Opp'n at 8. The Court also considers as background information the fact that Plaintiff was the most

10

senior employee in her section, yet the only one whose position was scheduled to be eliminated and the only Grade 12 management analyst not promoted to Grade 13.  A reasonable jury could find that these facts give rise to an inference of discrimination.

Because Plaintiff has met her burden, Defendant must come forward with a legitimate non-discriminatory reason for its action.  In so doing, Defendant argues that Ms. Brownfield was placed in Group V because her contributions in 2004 were the least of all the employees in the Management Services Branch. Def.'s Reply at 20.  Specifically, Defendant contends that Ms. Brownfield failed to volunteer for field work and that her work was inadequate on two important projects: the Accountability Unit Review Summaries and the Credit Card Procurement Review project. Def.'s Mot. at 25.

In light of Defendant's proffer, Plaintiff must raise an inference of pretext.  The pretext analysis proceeds as follows: Once the employer has met its burden of producing a nondiscriminatory reason for its actions, the focus of proceedings at trial (and at summary judgment) will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of

11

discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment). *Brody*, 199 F.3d at 458.

Ms. Brownfield has produced some evidence to suggest that Defendant's reason is pretextual. Specifically, Plaintiff has produced deposition testimony of her coworkers that suggests her supervisor, Mr. Bendler, may have minimized and omitted some of Plaintiff's work assignments to justify giving her no pay raise. Pl.'s Opp'n at 8. There is also evidence that Mr. Bendler altered his original reasons for reassigning certain work away from Ms. Brownfield to support her low ranking. *Id.* For example, in defense of Plaintiff's low ranking, Defendant claims that of the 12 summaries Plaintiff was asked to write for the CFOA Project, she only completed eight of them and the remaining four had to be "reassigned." Bendler's Aff. I p. 3, August 11, 2005. The clear implication of Defendant's tone is that Plaintiff's work was inadequate and thus reassignment was required. However, Plaintiff has produced emails from Mr. Bendler in which he told a coworker he had reassigned four of the summaries because another subordinate "had some downtime" and "asked Pam if she wanted some help." Pl.'s Mot., Ex. 11. The change in language from the email actually reassigning the work to the later characterization

justifying the lowest ranking and subsequent Group V placement raises an inference of pretext.

Defendant also claims that Ms. Brownfield's work on the credit card project was so behind schedule and inadequate that Mr. Bendler had to get another employee to help finish it. Bendler Aff. I p. 2-3. Mr. Bendler testified that Ms. Brownfield was assigned to the project equally with Mr. Lok, and she was supposed to review half of the 112 credit card accounts but that she only ultimately reviewed six. Bendler Dep. 90:1-93:22. However, Mr. Lok testified that he alone was assigned the project and he asked Ms. Brownfield to assist him, and that she completed the review of all the files he assigned her. Lok Dep. 79:21, 71:9-72:7. This evidence also undermines Defendant's proffered explanation for her low evaluation.

Viewing the facts in the light most favorable to the Plaintiff, drawing all inferences in the non-movant's favor, and adding the measure of "caution" our Circuit requires in discrimination cases, see *Woodruff*, 482 F.3d at 526, the Court finds that summary judgment is inappropriate at this time. When considering the "background information" of the non-promotion and the surplus designation, along with the significantly harsher characterization of Plaintiff's work in her evaluations than the evidence taken from the relevant time period supports, a reasonable jury could infer that the low ranking and subsequent

placement of Plaintiff in Group V of the CBC was an act of race discrimination. Accordingly, Plaintiff has met her burden and summary judgment is **DENIED** on the race discrimination claim regarding the pay raise denial in 2005.

### C. Plaintiff's Retaliation Claim

Plaintiff also alleges that since the filing of her formal EEO complaint in May 2005, her "managers... have retaliated by substantially changing Plaintiff's job responsibilities and intensifying the hostile work environment." Am. Compl. ¶ 19. Because the hostile work environment claim has already been disposed of, the Court will focus only on Plaintiff's retaliation claim.

Title VII makes it unlawful for an employer "to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... under this subchapter." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)(citing 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of unlawful retaliation, the plaintiff carries the initial burden of showing that (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a casual connection between the two exists. *Woodruff*, 482 F.3d at 529. If the plaintiff succeeds, the burden of production shifts to the defendant, who must articulate some

legitimate, non-retaliatory reason for the adverse action. *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005); *McDonnell Douglas*, 411 U.S. at 802. The ultimate burden of persuasion remains always with the plaintiff. *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 143 (2000). Once the defendant proffers the requisite explanation, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for retaliation. *Woodruff*, 482 F.3d at 529. (internal quotation marks omitted); *see also McDonnell Douglas*, 411 U.S. at 805, (describing the proffer as "presumptively valid").

After Plaintiff was placed into Group V of the CBC program and did not receive a pay raise, she contacted an EEO counselor and ultimately filed a formal administrative complaint in May 2005. Plaintiff alleges that shortly thereafter, her workload decreased significantly, she was improperly "counseled" for spending too much time socializing in another section, and she was again placed into the lowest group in the FDIC's new "Pay for Performance" ("PFP") program which replaced the CBC. *See* Pl.'s Opp'n at 27-30.

The Court finds that Plaintiff has made out a *prima facie* case of retaliation. It is undisputed that Plaintiff engaged in statutorily protected activity. The Court finds she has also

provided competent evidence of adverse employment actions in the form of reduction of her workload and placement into the lowest PFP Group.[2] "An employee suffers an adverse employment action if [s]he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Brown*, 199 F.3d at 457. Specifically, Plaintiff alleges that in July 2005, less than two months after she filed her formal EEO Complaint, her work on the Chief Financial Officer's Act (CFOA) Project was significantly reduced and those assignments were given to her coworkers. Pl.'s Opp'n at 26. She also claims that she was removed as the contact for the division DOA Directives Review project and was never given another directive to review after the filing of her complaint. *Id.* In November of 2005, she began emailing Mr. Bendler asking for assignments, and the record contains evidence of these requests extending through April 2006. Pl.'s Mot., Ex. 16. In some instances, Mr. Bendler responded by providing assignments, but he often told her to be patient because "work is low for everyone." *Id.* Plaintiff contends that all of her

---

[2] The Court rejects Plaintiff's claim that the "counseling" from Mr. Bendler regarding too much socializing in the ASB section constitutes an adverse employment action. Plaintiff suffered no "materially adverse consequences" as a result of this incident and therefore summary judgment is granted for Defendant as to this claim. *See Brown*, 199 F.3d at 457.

colleagues were fully employed while she literally had "no work." *Id.*

In March 2006, she was placed into the lowest group (those receiving the smallest pay raise) in the PFP program that replaced the CBC. Again, her ranking was based upon her "relatively low contributions" to the corporation. Def.'s Mot. at 6. While a reduction in work assignments does not always constitute an adverse employment action, here, Plaintiff has shown that her reduced workload directly resulted in receiving the lowest pay raise and also served to justify the placement of her position on the surplus list. This Circuit has held that a lost or reduced bonus can constitute an adverse employment action under Title VII. *Russell*, 257 F.3d at 817 (finding adverse employment action where Plaintiff received second highest bonus instead of highest). Therefore, the Court finds that Plaintiff has shown both protected activity and adverse employment action.

Defendant argues that Plaintiff has failed to show the required temporal proximity between the protected activity and the allegedly retaliatory action and therefore her retaliation claim must fail. Plaintiff filed her formal EEO complaint on May 13, 2005 and her first documented request for additional work was on November 21, 2005. Six months is generally too long of a time to assert a causal connection for retaliation purposes. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001)

17

(citing with approval circuit cases rejecting temporal proximity of three or four months as evidence of causation). However, in Plaintiff's declaration, she testified that her work diminished "immediately" and specifically refers to a lessened workload in July 2005. Brownfield Decl. ¶ 4, July 12, 2007. Though the PFP determination was not made until March 2006, her placement was based upon her "contributions" during 2005 and thus any reduction in workload would inevitably result in a later determination that she had not contributed sufficiently to merit placement in a higher group. Accordingly, the Court finds that there is a sufficient causal connection between the adverse employment actions and the protected activity to carry Plaintiff's burden.

Because Plaintiff has made out a *prima facie* case, the burden shifts to Defendant to offer a legitimate non-discriminatory reason for its actions. As such, Defendant contends that the reduction in Plaintiff's workload was a part of the cyclical nature of MSB's work and further evidence of why Plaintiff's position was properly placed on the surplus list. Def.'s Mot. at 31. Regarding Plaintiff's ranking in Group III of the PFP program, Mr. Sherman explained that Plaintiff's ranking was not meant to

> penalize her or look upon her contributions in a negative manner. Rather we evaluated her total contributions in comparison to those of all other DOA employees and group III was where we felt she was properly placed. She did some good work, but she just

>    did not distinguish herself in relation to many other
>    employees on the DOA staff.

Def's Mot. at 33 (quoting Sherman Aff. II ¶ 9, August 11, 2005).

At this stage, the *McDonnell Douglas* framework disappears, and the Court must simply determine whether the Plaintiff has put forth enough evidence to defeat the proffer and support a finding of retaliation. *Woodruff*, 482 F.3d at 438.  The Court finds that Plaintiff has made that showing.  Plaintiff has provided evidence in the form of deposition testimony and affidavits from her coworkers which directly contradict Defendant's assertion that work was slow for "everyone."  Specifically, two of Ms. Brownfield's colleagues, Ms. Mattus and Ms. Probst-Levy, testified that their workloads had increased while Ms. Brownfield's workload had decreased.  *See* Probst-Levy Aff. ¶ 4, August 15, 2006; Mattus Dep. at 38:6-39:8, March 13, 2007.  This testimony raises genuine issues of material fact relating both to the reduction in work and the later assignment into Group III of the PFP.  Viewing the evidence in the light most favorable to the Plaintiff and drawing all reasonable inferences in her favor, *Mastro*, 447 F.3d at 850, the Court finds that Plaintiff has raised genuine issues of material fact sufficient to defeat Defendant's motion for summary judgment on her retaliation claim.

**IV.  CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**    **Emmet G. Sullivan**
              **United States District Judge**
              **March 26, 2008**